# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO.; ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, LLC; and GALLAGHER IP SOLUTIONS LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>GREAT AMERICAN E&S INSURANCE COMPANY,<br><br>  Defendant. | Case No. _____ |

## COMPLAINT

Plaintiffs Arthur J. Gallagher & Co. ("AJG"), Arthur J. Gallagher Risk Management Services, LLC ("Gallagher Risk"), and Gallagher IP Solutions LLC ("GIPS") (collectively "Gallagher" or "Plaintiffs"), by and through their attorneys Riley Safer Holmes & Cancila LLP and Foley & Lardner LLP, file this Complaint seeking a Court order (1) enjoining Gallagher's compelled participation in an arbitration brought by Great American E&S Insurance Company ("Great American") and UMB Bank, National Association ("UMB") before the American Arbitration Association (the "AAA"), Case No. 01-24-0006-0668 (the "Arbitration"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and (2) quashing the Arbitration Summons to Produce Documents and Testify (the "Summons") issued in the Arbitration pursuant to 9 U.S.C. § 7 and Fed. R. Civ P. 45. In support of its Complaint, Gallagher alleges as follows:

## NATURE OF THE ACTION

1. This is an action to enjoin Great American's improper attempt to force Gallagher into a pending AAA Arbitration. The Arbitration is an insurance coverage dispute between Great

American (the insurer) and UMB (the insured), in which Great American has denied UMB's insurance claim under a Lender Collateral Residual Value Insurance Policy (the "Policy"), *a contract to which Gallagher is not a party*.

2. Jurisdiction for the Arbitration arises from an arbitration clause contained in the Policy. The sole parties and signatories to the Policy are Great American and UMB.

3. Gallagher is not a party to the Policy or its embedded arbitration clause, nor has Gallagher otherwise agreed to be bound by the Policy's arbitration clause or to arbitrate disputes arising under the Policy.

4. What's more, after a dispute under the Policy arose, Great American and UMB executed an amended arbitration agreement to govern their dispute. This amended arbitration agreement materially altered the arbitration procedures to which Great American and UMB agreed under the Policy. Great American asked Gallagher to sign the amended arbitration agreement and join the Arbitration, but Gallagher declined, and Great American and UMB proceeded to sign their new agreement and proceed with the arbitration in Gallagher's absence.

5. The law makes clear that non-signatories, like Gallagher, who are not parties to the agreement to arbitrate and have not consented to arbitrate, cannot be forced to join an arbitration proceeding. The effort to join Gallagher to the Arbitration exceeds arbitral authority and jurisdiction and must be enjoined.

6. Moreover, the Summons issued by the arbitrator summoning Gallagher to appear for a deposition and produce documents must be quashed. Section 7 of the FAA provides limited authority for arbitrators to summon non-parties such as Gallagher to appear and produce documents, and the Summons issued here greatly exceeds the scope of a proper summons under Section 7.

**JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of costs, and complete diversity exists between all Plaintiffs and Defendant.

8. Venue is proper pursuant to 9 U.S.C. § 4, which provides that this Petition may be filed in any United States District Court. Venue is also proper pursuant to Fed. R. Civ. P. 45(d) because the Summons purports to require compliance in Chicago, Illinois.

**PARTIES**

9. Plaintiff Arthur J. Gallagher & Co. is a Delaware corporation with its principal place of business in Illinois.

10. Plaintiff Arthur J. Gallagher Risk Management Services, LLC is a Delaware LLC with its principal place of business in Illinois.

11. Plaintiff Gallagher IP Solutions LLC is a Delaware LLC with its principal place of business in Illinois.

12. Defendant Great American E&S Insurance Company is an Ohio corporation with its principal place of business in Ohio.

**FACTUAL BACKGROUND**

**Gallagher's Relationship With Great American**

1. On November 8, 2022, Gallagher acquired the assets of two entities—PIUS Limited, LLC ("PIUS") and Newlight Capital, LLC ("Newlight")—which had preexisting relationships with Great American.

2. For more than a year prior to Gallagher's acquisition of PIUS, PIUS acted as an insurance "producer," or "broker" for Great American, identifying potential insureds and

3

referring them to Great American so that Great American could determine whether or not it wished to offer coverage to the referred entity.

3. PIUS's relationship with Great American was governed by a Producer Agreement and an Underwriting Authority Addendum to the Producer Agreement, both of which PIUS and Great American entered into effective October 15, 2021. These agreements established PIUS and Great American's respective rights and obligations as it relates to referrals and underwriting of certain risks. *Neither the Producer Agreement nor its Underwriting Addendum contains an arbitration clause*.

4. Following Gallagher's acquisition of PIUS and Newlight, AJG formed GIPS in May 2023, as a subsidiary of AJG to operate the PIUS and Newlight businesses. Neither AJG nor its subsidiaries or affiliates acquired the liabilities of either PIUS or Newlight in the asset purchase transaction. AJG and its subsidiaries and affiliates do not have any responsibility for pre-acquisition acts or omissions of PIUS and Newlight.

**The Cooks Venture Transaction**

5. The Arbitration dispute arises out of a complex transaction involving Great American, UMB, an entity called Cooks Venture, and others.

6. Cooks Venture was an independent poultry genetics and heritage breeding company. To raise funding, in June 2023, Cooks issued fixed rate senior notes in the face amount of $60 million, which were purchased by certain noteholders.

7. As part of the transaction, Great American and UMB—which was acting as Cooks Venture's trustee—entered into the Policy to insure the value of the secured notes. PIUS acted as the "producer" or "broker" for the policy. In other words, it recommended Cooks Venture's insurance application to Great American, who then underwrote and issued the Policy to Cooks Venture's trustee, UMB.

8. ***Neither PIUS, Newlight, nor any Gallagher entity is a party to the Policy***. And the Policy contains an arbitration provision that unequivocally applies only to the "Parties" to the Policy. Article I and the preamble of the Policy exclusively define the "Parties" as "the 'Company'" and "the Named Insured" as set forth in the Policy's Declarations. The Declarations, in turn, define the "Company" as Great American and the "Named Insured" as UMB.

9. In relation to the Cooks transaction, several other agreements were executed between various parties. Three of those agreements included Newlight as a party—a Proceeds Disbursing and Security Agreement ("PDSA"), a Disbursement Monitoring Agreement ("DMA"), and a Trustee Services Agreement ("TSA"). ***None of these agreements contain an arbitration clause***.

### The Arbitration Dispute

10. Cooks Venture subsequently experienced a financial downturn in its business, failed to satisfy certain obligations, ceased its business operations, and ultimately filed for bankruptcy. UMB thereafter sought to enforce its rights under the Policy and demanded payment from Great American for the outstanding value insured by the Policy.

11. Great American denied UMB's claim, and on March 24, 2024, commenced the Arbitration by serving a demand for arbitration on UMB. On June 20, 2024, Great American served an amended demand for arbitration on UMB. Both the demand for arbitration and the amended demand for arbitration were made pursuant to the arbitration clause in the Policy.

12. After commencing the arbitration, on or about October 24, 2024, Great American and UMB entered into an amended arbitration agreement. The amended arbitration agreement altered and superseded terms of the arbitration provisions Great American and UMB had adopted in the Policy in several ways. Notably, Great American and UMB agreed to proceed with only

5

one arbitrator, Mr. Peter Rosen, rather than a panel of three arbitrators who were to be selected under the procedure specified in the Policy.

13. Great American and UMB asked Gallagher to join the Arbitration and sign the amended arbitration agreement. Gallagher declined. Great American and UMB then proceeded to continue arbitrating, pursuant to their amended agreement, without Gallagher as a party.

### The Improper Joinder of Gallagher to the Arbitration

14. After Gallagher declined to voluntarily join the Arbitration as a party, on January 27, 2025, Great American filed a Request to Join Additional Parties in the Arbitration. Great American's request asserted that the question of whether Gallagher agreed to arbitrate was for the arbitrator—not a court—to decide, and that its claims against Gallagher are arbitrable despite Gallagher never agreeing to arbitrate and repeatedly objecting to any requests to participate in the Arbitration.

15. On February 10, 2025, Gallagher submitted a letter to the arbitrator objecting to Great American's Request to Join. Gallagher did so only after obtaining express agreement from the parties and the arbitrator that Gallagher's submission of such letter and opposition to Great American's Request to Join would not be deemed as submission to the AAA's jurisdiction or an agreement to arbitrate. Gallagher's letter explained that the question of whether Gallagher agreed to arbitrate is a question exclusively for a court to decide, and that Gallagher could not be compelled to join the Arbitration because it never agreed to arbitrate any dispute with Great American or UMB.

16. On April 18, 2025, the arbitrator entered an order granting Great American's Request to Join and purporting to join Gallagher as a party to the Arbitration. The arbitrator held that (1) the question of whether Gallagher agreed to arbitrate was for the arbitrator, not a court,

6

and (2) under theories of "estoppel" and "assumption of obligations," Gallagher was subject to the arbitration agreement it did not sign.

### The Improper Arbitration Summons Issued to Gallagher

17. On February 27, 2025, the arbitrator signed and issued the Summons. Gallagher's counsel accepted service of the Summons on Gallagher's behalf on March 3, 2025, reserving Gallagher's right to challenge the Summons' propriety in court.

18. The Summons purports to require Gallagher to appear for a deposition taken by Great American on June 16, 2025, at 10:00 a.m. at the offices of Veritext, 1 N. Franklin, Suite 2100, Chicago, IL 60606. The Summons demands that Gallagher produce a corporate representative to testify at that deposition, pursuant to Federal Rule of Civil Procedure 30(b)(6). The Summons contains an extensive list of 39 topics about which the Gallagher representative must be prepared to testify.

19. The Summons also demands Gallagher produce documents in advance of the deposition (within 30 days of service of the Summons). The Summons includes 37 document requests seeking an extraordinarily broad production of countless documents.

20. The Summons specifically cites Section 7 of the FAA as the authority under which the Summons was issued.

21. The Summons did not include the text of Fed. R. Civ. P. 45(d) and (e), as required by Fed. R. Civ. P. 45(a)(1)(iv). Nor did Great American tender witness fees and reasonably estimated mileage when serving the Summons.

### Gallagher's Irreparable Harm

22. Due to the improper joinder of Gallagher in the Arbitration, as well as the improper Summons issued to Gallagher, Gallagher has suffered irreparable harm and will continue to suffer such harm absent an order from the Court enjoining the improper conduct.

23. Among other things, forcing Gallagher to arbitrate a matter it never agreed to arbitrate deprives Gallagher of its fundamental right to litigate in the forum in which it wishes to resolve its disputes and requires Gallagher to expend time and resources arbitrating an issue that is not arbitrable.

24. As an example, on April 21, 2025, UMB issued three notices of deposition to AJG, Gallagher Risk, and GIPS, purporting to require Gallagher, as a "party" to the arbitration, to produce corporate representatives to sit for a deposition. The irreparable harm is obvious: Gallagher is forced to either engage as a party deponent in a forum in which it never agreed to litigate, or ignore the deposition notices and suffer the attendant adverse consequences.

25. For these reasons, courts recognize that "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm." *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827 at *5 (N.D. Ill. Feb 17, 2009) (citations omitted).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Permanent Injunction Pursuant to 9 U.S.C. § 4)

26. Plaintiffs repeat and re-allege paragraphs 2 through 25 hereof, as if fully set forth herein.

27. Plaintiffs seek an order enjoining the Arbitration as to Plaintiffs.

28. Plaintiffs are not parties to the Lender Collateral Residual Value Insurance Policy or the amended arbitration agreement, have not consented to the Arbitration, and have not consented to AAA's jurisdiction or authority.

29. Pursuant to 9 U.S.C. § 4, this Court has the authority to enjoin the Arbitration as to Plaintiffs.

30. This Court should exercise its authority to relieve Plaintiffs from being forced to proceed with an Arbitration to which they never agreed to be bound.

## SECOND CAUSE OF ACTION
### (Quashal of the Arbitration Summons Pursuant to Fed. R. Civ. P. 45)

31. Plaintiffs repeat and re-allege paragraphs 2 through 30 hereof, as if fully set forth herein.

32. Plaintiffs seek an order quashing the February 27, 2025 Arbitration Summons to Produce Documents and Testify.

33. The Summons is defective, invalid, and unenforceable in violation of 9 U.S.C. § 7 and Federal Rule of Civil Procedure 45.

34. Pursuant to Rule 45, this court has the authority quash the Summons.

35. This court should exercise its authority to relieve Plaintiffs from being forced to comply with the improper Summons.

## PRAYER FOR RELIEF

Plaintiffs respectfully request an Order from this Court:

A. Enjoining arbitration of any and all claims by Great American against Plaintiffs;

B. Quashing the February 27, 2025 Arbitration Summons to Produce Documents and Testify;

C. Awarding Plaintiffs their attorneys' fees and costs; and

D. Granting such other and further relief as this Court deems just and proper.

Dated: April 24, 2025

/s/ Ronald S. Safer
Ronald S. Safer
Eli J. Litoff
Shaun Zhang
RILEY SAFER HOLMES AND CANCILA, LLP

9

Case: 1:25-cv-04474 Document #: 1 Filed: 04/24/25 Page 10 of 11 PageID #:10

1 S. Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8700
rsafer@rshc-law.com
elitoff@rshc-law.com
szhang@rshc-law.com

Michael C. Kasdin
Jesse L. Byam-Katzman
Foley & Lardner LLP
321 N. Clark Street, Suite 3000
Chicago, IL 60654
(312) 832-4500
mkasdin@foley.com
JByam-Katzman@foley.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document has been furnished via E-Mail to the following:

| | |
|---|---|
| James P. Ruggeri<br>Edward B. Parks, II<br>RUGGERI PARKS WEINBERG LLP<br>1875 K Street NW, Suite 800<br>Washington, DC 20006<br>(202) 984-1400<br>jruggeri@ruggerilaw.com<br>eparks@ruggerilaw.com | Alexander E. Potente<br>CLYDE & CO US LLP<br>150 California Street, Suite 1500<br>San Francisco, CA 94111<br>(415) 365-9800<br>alexpotente@clydeco.us |

*Counsel for Great American E&S Insurance Company*

Peter M. Gillon
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
(202) 663-9249
peter.gillon@pillsburylaw.com
Edward.flanders@pillsburylaw.com

*Counsel for UMB Bank, National Association*

Peter K. Rosen
JAMS, INC.
prosen@jamsadr.com

*Arbitrator*

Dated: April 24, 2025               */s/ Eli J. Litoff*