**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO.;<br>ARTHUR J. GALLAGHER RISK<br>MANAGEMENT SERVICES, LLC; and<br>GALLAGHER IP SOLUTIONS LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>GREAT AMERICAN E&S INSURANCE<br>COMPANY,<br><br>        Defendant. | Case No. 1:25-CV-04474<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF GALLAGHER'S EMERGENCY MOTION**
**FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF**

Ronald S. Safer
Eli J. Litoff
Shaun Zhang
RILEY SAFER HOLMES AND CANCILA, LLP
1 S. Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8700
rsafer@rshc-law.com
elitoff@rshc-law.com
szhang@rshc-law.com

Michael C. Kasdin
Jesse L. Byam-Katzman
Foley & Lardner LLP
321 N. Clark Street, Suite 3000
Chicago, IL 60654
(312) 832-4500
mkasdin@foley.com
JByam-Katzman@foley.com

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

I.  Gallagher's Relationship With Great American.................................................... 2

II.  The Cooks Venture Transaction. ........................................................................... 3

III.  The Arbitration Dispute. ........................................................................................ 4

IV.  The Improper Joinder Of Gallagher To The Arbitration. .................................... 5

V.  The Arbitration Summons to Produce Documents and Testify.......................... 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ......................................................................................................................... 8

I.  Gallagher's Compelled Participation In The Arbitration Should Be Preliminarily
Enjoined. ................................................................................................................. 8

    A.  This Court Has Authority To Enjoin The Arbitration Under The Federal
Arbitration Act. ............................................................................................ 8

    B.  The Arbitrator's Order Was Blatantly Improper, and Therefore, Gallagher
Has A Strong Likelihood Of Success On The Merits. ............................... 9

        1.  Only This Court—Not The Arbitrator—Has Authority To Decide
Whether Gallagher Agreed To Arbitrate. ...................................... 9

        2.  Gallagher Cannot Be Forced To Join An Arbitration To Which It
Never Consented. ........................................................................... 12

            a.  The Direct Benefits Theory Of Estoppel Does Not Apply to
Gallagher. ........................................................................ 13

            b.  Gallagher Did Not Assume The Obligation To Arbitrate
Under The Policy. ........................................................... 15

    C.  Gallagher Does Not Have An Adequate Remedy At Law And Will Suffer
Irreparable Harm If Injunctive Relief Is Not Granted. .......................... 17

    D.  The Balance Of Hardships And Public Interest Favor Injunctive Relief............. 18

II.  The Arbitration Summons Compels Gallagher To Engage In Improper Pre-Hearing

Discovery And Should Be Quashed.................................................................................... 18

CONCLUSION.................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*Abbott Labs v. Andrx Phams, Inc.*,
No. 05 C 1490, 2005 WL 1273105 (N.D. Ill. May 20, 2005) .................................................7

*Abbott Labs v. Mead Johnson & Co.*,
971 F.2d 6 (7th Cir. 1992) ........................................................................................7, 18

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011).....................................................................................................8

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).................................................................................................................10

*Belzberg v. Verus Invs. Holdings Inc.*,
21 N.Y.3d 626, 999 N.E.2d 1130 (2013)................................................................................13

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2022 WL 2257179 (N.D. Ill. June 23, 2022) ................................................19

*CCC Info. Servs. Inc. v. Tractable Inc.*,
No. 18 C 7246, 2019 WL 2011092 (N.D. Ill. May 7, 2019), *aff'd sub nom. CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F.4th 721 (7th Cir. 2022) ........................................................11

*Coatney v. Ancestry.com DNA, LLC*,
93 F.4th 1014 (7th Cir. 2024) .........................................................................................12, 14

*COMSAT Corp. v. Nat'l Sci. Found.*,
190 F.3d 269 (4th Cir. 1999) .................................................................................................19

*CVS Health Corp. v. Vividus, LLC*,
878 F.3d 703 (9th Cir. 2017) .................................................................................................20

*Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*,
420 F. Supp. 2d 866 (N.D. Ill. 2006) .......................................................................................8

*Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*,
7 F.4th 555 (7th Cir. 2021) ...........................................................................................15, 16

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)...........................................................................................................9, 10

*Hay Grp., Inc. v. E.B.S. Acquisition Corp.*,
360 F.3d 404 (3d Cir. 2004)....................................................................................................19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)...........................................................................................................10

*Interactive Brokers, LLC v. Duran*,
   No. 08-CV-6813, 2009 WL 393827 (N.D. Ill. Feb 17, 2009) ...........................................17, 18

*John Wiley & Sons, Inc. v. Livingston*,
   376 U.S. 543 (1964)............................................................................................................9

*K.F.C. v. Snap Inc.*,
   29 F.4th 835 (7th Cir. 2022) .............................................................................................9, 10

*Kwatinetz v. Mason*,
   356 F. Supp. 3d 343 (S.D.N.Y. 2018)..............................................................................11, 15

*Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*,
   549 F.3d 210 (2d Cir. 2008).............................................................................................19

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
   268 F.3d 58 (2d Cir. 2001)...............................................................................................13, 15

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,
   939 F.3d 1145 (11th Cir. 2019) .......................................................................................20

*Maryland Casualty Co. v. Realty Advisory Board*,
   107 F.3d 979 (2d Cir. 1997).............................................................................................17

*Matria Healthcare, LLC v. Duthie*,
   584 F. Supp. 2d 1078 (N.D. Ill. 2008) .............................................................................19

*Mays v. Dart*,
   974 F.3d 810 (7th Cir. 2020) ...........................................................................................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
   49 F.3d 323 (7th Cir. 1995) .............................................................................................8, 10

*Mohammed v. Uber Techs., Inc.*,
   237 F. Supp. 3d 719 (N.D. Ill. 2017) ...............................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*,
   203 F. Supp. 3d 312 (S.D.N.Y. 2016)..............................................................................13, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys., LLC*,
   289 F. Supp. 3d 457 (S.D.N.Y. 2018)..............................................................................11

*Next Level Plan. & Wealth Mgmt., LLC v. Prudential Ins. Co. of Am.*,
   No. 18-MC-65, 2019 WL 585672 (E.D. Wis. Feb. 13, 2019) ..................................................19

*OptionsCity Software, Inc. v. Baumann*,
No. 15 C 5019, 2015 WL 3855622 (N.D. Ill. June 19, 2015) ...................................7

*Roland Machinery Co. v. Dresser Ind., Inc.*,
749 F.2d 380 (7th Cir. 1984) ...................................................................................9

*Ryan Beck & Co., Inc. v. Campbell*,
No. 02 C 7016, 2002 WL 31696792 (N.D. Ill. Dec. 2, 2002) .................................17

*Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*,
643 F.2d 863 (1st Cir. 1981)....................................................................................8

*Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*,
256 F.3d 587 (7th Cir. 2001) ...........................................................................11, 16

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
64 F.3d 773 (2d Cir. 1995)......................................................................................15

*Ty, Inc. v. The Jones Grp.*,
237 F.3d 891, 895 (7th Cir. 2001) ...........................................................................7

*United Nat. Foods, Inc. v. Teamsters Loc. 414*
58 F.4th 927 (7th Cir. 2023) ....................................................................................9

*Ware v. C.D. Peacock, Inc.*,
No. 10 C 2587, 2010 WL 1856021 (N.D. Ill. May 7, 2010) .................................18

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ......................................................................................10

*Zirpoli v. Midland Funding, LLC*,
48 F.4th 136 (3d Cir. 2022) .............................................................................11, 15

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
417 F.3d 682 (7th Cir. 2005) ..................................................................................14

**STATUTES**

9 U.S.C. § 4.........................................................................................................1, 8

9 U.S.C. § 7.................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 30(b)(6)...................................................................................2, 6, 20

Fed. R. Civ P. 45 .......................................................................................1, 7, 20, 21

Plaintiffs Arthur J. Gallagher & Co. ("AJG"), Arthur J. Gallagher Risk Management Services, LLC ("Gallagher Risk"), and Gallagher IP Solutions LLC ("GIPS") (collectively "Gallagher" or "Plaintiffs"), by and through their attorneys Riley Safer Holmes & Cancila LLP and Foley & Lardner LLP, respectfully submit this memorandum of law in support of their motion for injunctive relief.

Gallagher seeks a temporary restraining order and a preliminary injunction (1) enjoining Gallagher's compelled participation in an American Arbitration Association ("AAA") arbitration between Great American E&S Insurance Company ("Great American" or "Defendant") and UMB Bank, National Association ("UMB"), Case No. 01-24-0006-0668 (the "Arbitration"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and (2) quashing the Arbitration Summons to Produce Documents and Testify issued in the Arbitration (the "Summons") pursuant to Fed. R. Civ P. 45.

## **INTRODUCTION**

Gallagher brings this action to enjoin Gallagher's compelled participation in an arbitration proceeding that Gallagher never agreed to join and conducted pursuant to an agreement to which Gallagher is not a party, and to quash an unenforceable arbitration summons.

The Arbitration is an insurance coverage dispute. Great American, an insurance company, has denied the insurance claim of UMB, its insured. Gallagher is an insurance broker, and a Gallagher entity acted as the broker, or "producer," for the insurance policy at issue.

Great American commenced the Arbitration against UMB pursuant to an arbitration clause in the policy. Gallagher is not a party to that insurance policy. Indeed, Gallagher is not a party to any contract with Great American or UMB that contains an arbitration clause, and Gallagher never agreed to arbitrate any dispute with Great American or UMB. What is more, after Great American commenced the Arbitration, Great American and UMB entered into an *amended* arbitration

agreement, which materially altered the terms on which the arbitration would proceed. Gallagher is not a party to that amended arbitration agreement, either. In fact, Great American asked Gallagher to sign the amended arbitration agreement and join the Arbitration, and Gallagher expressly declined to do so.

Nonetheless, because Great American's litigation strategy appears to be to blame Gallagher for the loss at issue in the coverage dispute, Great American has improperly attempted to rope Gallagher into the Arbitration. It moved to join Gallagher as a party to the Arbitration, and the arbitrator, improperly and without jurisdiction over Gallagher, granted Great American's request.

It is black-letter law that the decision of whether Gallagher agreed to arbitrate is for a court—not an arbitrator—to decide. On that basis alone, the arbitrator's order compelling Gallagher's participation in the Arbitration is invalid and must be enjoined. Moreover, there is absolutely no legal basis to force Gallagher to arbitrate a dispute that it never agreed to arbitrate. Without Court intervention to stop Gallagher's compelled participation in the Arbitration, Gallagher will suffer irreparable harm.

In addition, the Summons issued by the arbitrator ordering Gallagher to produce a corporate representative for deposition in accordance with Fed. R. Civ. P. 30(b)(6) and to produce documents outside of an arbitration hearing should be quashed as seeking discovery that is plainly outside the bounds allowed by the FAA.

## STATEMENT OF FACTS

### I.    Gallagher's Relationship With Great American.

Great American is an insurance company. On November 8, 2022, Gallagher acquired the assets of two entities—PIUS Limited, LLC ("PIUS") and Newlight Capital, LLC ("Newlight")— which had preexisting relationships with Great American. For more than a year prior to Gallagher's acquisition of PIUS, PIUS acted as an insurance "producer," or "broker" for Great American,

identifying potential insureds and referring them to Great American, so that Great American could determine whether or not it wished to offer coverage to the referred entity.

PIUS's relationship with Great American was governed by a Producer Agreement and an Underwriting Authority Addendum to the Producer Agreement, both of which PIUS and Great American entered into effective October 15, 2021. *See* <u>Exhibits 1-2</u>.[1] These agreements established PIUS and Great American's respective rights and obligations to one another as it relates to referrals and underwriting of certain risks. ***Neither the Producer Agreement nor its Underwriting Addendum contains an arbitration clause***.

Following Gallagher's acquisition of PIUS and Newlight, Gallagher formed GIPS in May 2023, as a subsidiary of AJG to operate the PIUS and Newlight businesses. Neither AJG nor its subsidiaries or affiliates acquired the liabilities of either PIUS or Newlight in the asset purchase transaction. AJG and its subsidiaries and affiliates do not have any responsibility for pre-acquisition acts or omissions of PIUS and Newlight.

## II. The Cooks Venture Transaction.

The Arbitration dispute arises out of a complex transaction involving Great American, UMB, an entity called Cooks Venture, and others.

Cooks Venture was an independent poultry genetics and heritage breeding company. To raise funding, in June 2023, Cooks issued fixed rate senior notes in the face amount of $60 million, which were purchased by certain noteholders.

As part of the transaction, Great American and UMB—which was acting as Cooks Venture's trustee—entered into a Lender Collateral Residual Value Insurance Policy (the "Policy")

---

[1] Because the attachments to this Memorandum contain confidential and sensitive business information of the parties and non-parties and relate to a confidential arbitration, Gallagher has preliminarily filed them under seal.

to insure the value of the secured notes. Exhibit 3. PIUS acted as the "producer" or "broker" for the policy. In other words, it recommended Cooks Venture's insurance application to Great American, who then underwrote and issued the Policy to Cooks Venture's trustee, UMB.

**Neither PIUS, Newlight, nor any Gallagher entity is a party to the Policy**. And the Policy contains an arbitration provision that unequivocally applies only to the "Parties" to the Policy. Indeed, Article I and the preamble of the Policy exclusively defines the "Parties" as "the 'Company'" and "the Named Insured" as set forth in the Policy's Declarations. Ex. 3, at 6-7, 10. The Declarations, in turn, define the "Company" as Great American and the "Named Insured" as UMB. *Id.* at 1.

In relation to the Cooks transaction, several other agreements were executed between various parties. Three of those agreements included Newlight as a party—a Proceeds Disbursing and Security Agreement ("PDSA") (Exhibit 4), a Disbursement Monitoring Agreement ("DMA") (Exhibit 5), and a Trustee Services Agreement ("TSA") (Exhibit 6). **None of these agreements contain an arbitration clause**.

## III. The Arbitration Dispute.

Cooks Venture subsequently experienced a financial downturn in its business, failed to satisfy certain obligations, ceased its business operations, and ultimately filed for bankruptcy. UMB thereafter sought to enforce its rights under the Policy and demanded payment from Great American for the outstanding value insured by the Policy.

Great American denied UMB's claim, and on March 24, 2024, commenced the Arbitration by serving a demand for arbitration on UMB. On June 20, 2024, Great American served an amended demand for arbitration on UMB. Both the demand for arbitration and the amended demand for arbitration were made pursuant to the arbitration clause in the Policy.

After commencing the arbitration, on or about October 24, 2024, Great American and UMB

4

entered into an amended arbitration agreement. The amended arbitration agreement altered and superseded terms of the arbitration provisions Great American and UMB had adopted in the Policy in several ways. Notably, Great American and UMB agreed to proceed with only one arbitrator, Mr. Peter Rosen, rather than a panel of three arbitrators who were to be selected under the procedure specified in the Policy.

Great American asked Gallagher to join the Arbitration dispute and sign the amended arbitration agreement. Gallagher declined. Great American and UMB then proceeded to continue arbitrating, pursuant to their amended agreement, without Gallagher as a party.[2]

The table below summarizes the various agreements mentioned above. As shown, Gallagher (including its acquired entities PIUS and Newlight) is not a party to *any* agreement containing an arbitration clause:

| Agreement | Parties | Arbitration Clause? |
|---|---|---|
| **The Policy** | **Great American, UMB** | **Yes** |
| **Amended Arbitration Agreement** | **Great American, UMB** | **Yes** |
| U.S. Producer Agreement | Great American, PIUS | No |
| Underwriting Authority Addendum | Great American, PIUS | No |
| Proceeds Disbursing and Security Agreement | Cooks Venture, UMB, Newlight | No |
| Disbursement Monitoring Agreement | Cooks Venture, Great American, UMB, Newlight | No |
| Trustee Services Agreement | Cooks Venture, UMB, Newlight | No |

## IV. The Improper Joinder Of Gallagher To The Arbitration.

After Gallagher declined to voluntarily join the Arbitration as a party, on January 27, 2025, Great American filed a Request to Join Additional Parties in the Arbitration. Great American's

---

[2] Gallagher was not provided with a final, executed copy of the amended arbitration agreement.

request asserted that the question of whether Gallagher agreed to arbitrate was for the arbitrator—not a court—to decide, and that its claims against Gallagher are arbitrable despite Gallagher never agreeing to arbitrate and repeatedly objecting to any requests to participate in the Arbitration.

On February 10, 2025, Gallagher submitted a letter to the arbitrator objecting to Great American's Request to Join. Gallagher did so only after obtaining express agreement from the parties and the arbitrator that Gallagher's submission of such letter and opposition to Great American's Request to Join would not be deemed as submission to the AAA's jurisdiction or an agreement to arbitrate. Gallagher's letter explained that the question of whether Gallagher agreed to arbitrate is a question exclusively for a court to decide, and that Gallagher could not be compelled to join the Arbitration because it never agreed to arbitrate any dispute with Great American or UMB.

On April 18, 2025, the arbitrator entered an order granting Great American's Request to Join and purporting to join Gallagher as a party to the Arbitration (the "Order"). Exhibit 7. The arbitrator held that (1) the question of whether Gallagher agreed to arbitrate was for the arbitrator, not a court, and (2) Gallagher was subject to the arbitration agreement it did not sign under theories of "direct benefits estoppel" and "assumption of obligations.".

## V.     The Arbitration Summons To Produce Documents And Testify.

On February 27, 2025, the arbitrator signed and issued the Summons. Exhibit 8. Gallagher's counsel accepted service of the Summons on Gallagher's behalf on March 3, 2025, reserving Gallagher's right to challenge the Summons' propriety in court.

The Summons purports to require Gallagher to appear for a deposition taken by Great American on June 16, 2025 at 10:00 a.m. at the offices of Veritext, 1 N. Franklin, Suite 2100, Chicago, IL 60606. *Id.* at 2-3. The Summons demands that Gallagher produce a corporate representative to testify at that deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id.*

at 3. The Summons contains an extensive list of 39 topics about which the Gallagher representative must be prepared to testify. *Id.* at 3-7.

The Summons also demands Gallagher produce documents in advance of the deposition (within 30 days of service of the Summons). *Id.* at 7. The Summons includes 37 document requests, seeking an extraordinarily broad production of countless documents. *Id.* at 10-15.

The Summons specifically cites Section 7 of the FAA as the authority under which the Summons was issued. *Id.* at 2. The Summons did not include the text of Fed. R. Civ. P. 45(d) and (e), as required by Fed. R. Civ. P. 45(a)(1)(iv). Nor did Great American tender witness fees and reasonably estimated mileage when serving the Summons.

## LEGAL STANDARD

A temporary restraining order is designed to maintain the status quo until a hearing can be held on an application for a preliminary injunction. *See Abbott Labs v. Andrx Phams, Inc.*, No. 05 C 1490, 2005 WL 1273105, at *1 (N.D. Ill. May 20, 2005). A party seeking a temporary restraining order must make a threshold showing that it (1) has some likelihood of succeeding on the merits; (2) has no adequate remedy at law; and (3) will suffer irreparable harm if preliminary relief is denied. *OptionsCity Software, Inc. v. Baumann*, No. 15 C 5019, 2015 WL 3855622, at *3 (N.D. Ill. June 19, 2015) (citing *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If this threshold is met, the court applies a "sliding scale" approach and weighs these considerations, as well as the balance of harm to the parties and the public interest, to determine whether to grant injunctive relief. *Id.* (citing *Ty, Inc. v. The Jones Grp*., 237 F.3d 891, 895 (7th Cir. 2001)).

The standard for a preliminary injunction is essentially the same:

(1) the party seeking the injunction has a reasonable likelihood of success on the merits, (2) there is no adequate remedy at law, (3) irreparable harm will occur without the injunction, (4) the harm that will occur to the moving party if no injunction issues outweighs the harm the injunction will cause to the nonmoving party, and (5) the injunction will not harm the public interest.

*Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006).

"A plaintiff must demonstrate that its claim has some likelihood of success on the merits … [and] what amounts to 'some' depends on the facts of the case at hand because of [the] sliding scale approach." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (quotation marks and citations omitted).

## <u>ARGUMENT</u>

**I.     Gallagher's Compelled Participation In The Arbitration Should Be Preliminarily Enjoined.**

**A.     This Court Has Authority To Enjoin The Arbitration Under The Federal Arbitration Act.**

As an initial matter, Section 4 of the FAA provides a party improperly being compelled to arbitrate an avenue for relief by petitioning the court. Indeed, the Seventh Circuit recognizes "§ 4 allows parties who feel that their case is not being arbitrated *or is being arbitrated improperly*, to petition the court for an order compelling arbitration on the proper terms." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326 (7th Cir. 1995) (emphasis added). Moreover, the Seventh Circuit, as well as others, acknowledge that "case law has interpreted § 4 to extend to a parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement[,]" including a party's grievance that it is being forced to arbitrate under an agreement to which it was not a party and to which it never consented. *See Id.* at 327 (finding § 4 provides for judicial remedy for a party who asserts arbitration being sought exceeds the terms of an arbitration agreement); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011) ("[W]here the court determines … that the parties have not entered into a valid and binding arbitration agreement, the court has authority to enjoin the arbitration proceedings."); *Societe*

*Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.").

**B.     The Arbitrator's Order Was Blatantly Improper, And Therefore, Gallagher Has A Strong Likelihood Of Success On The Merits.**

The threshold inquiry in determining the propriety of preliminary injunctive relief is the likelihood of prevailing on the merits, and that factor significantly affects the remainder of the analysis. *See Roland Machinery Co. v. Dresser Ind., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984) ("The more likely plaintiff is to win, the less heavily need the balance of harms weigh in his favor[.]"). As demonstrated below, Gallagher has an exceedingly high likelihood of success, easily clearing the "some likelihood of success on the merits" threshold for injunctive relief.

1.     Only This Court—Not The Arbitrator—Has Authority To Decide Whether Gallagher Agreed To Arbitrate.

As a threshold matter, the arbitrator lacked authority to decide whether Gallagher agreed to arbitrate. Thus, the arbitrator's order purporting to join Gallagher to the Arbitration is facially invalid, and Gallagher's compelled participation in the Arbitration should be immediately enjoined.

A party cannot be compelled to arbitrate a dispute unless "the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Courts have long recognized that "whether the parties have agreed to arbitrate is presumptively a question for judicial determination." *United Nat. Foods, Inc. v. Teamsters Loc.* 414, 58 F.4th 927, 933 (7th Cir. 2023) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964)). "[B]ecause arbitration is a matter of contract, judges must decide that a contract has been formed before they may order arbitration." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). "'Unless the parties clearly and unmistakably provide otherwise, the question of whether

the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" *United Nat. Foods, Inc.*, 58 F.4th at 934 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). *See also Lauer*, 49 F.3d at 326 ("[F]ederal courts are charged with the initial task of interpreting the arbitration agreement to determine whether the parties agreed to arbitrate the particular dispute.").

Here, Gallagher has never agreed to arbitrate with Great American or UMB. Gallagher did not sign the amended arbitration agreement between Great American and UMB under which the Arbitration is proceeding (and expressly refused to arbitrate under it). Nor is Gallagher a party to the Policy under which Great American initially commenced the Arbitration and which contained the arbitration clause binding Great American and UMB, the terms of which were subsequently superseded by the amended arbitration agreement. When a party disputes that it is bound to an agreement to arbitrate (as Gallagher does here), "the court must resolve" the issue. *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 727-28 (N.D. Ill. 2017) (citing *Granite Rock Co.*, 561 U.S. 287, 297 (2010)).

Because the courts have exclusive authority to decide whether Gallagher agreed to arbitrate, the arbitrator's April 18 Order purporting to join Gallagher to the Arbitration is facially invalid. In his Order, the arbitrator made two findings. First, he observed that "there is a valid and enforceable arbitration agreement in the Policy." Ex. 7, at ¶ 13. Then, he concluded that the Policy's arbitration clause, which delegates questions concerning the formation or validity of the arbitration clause to the arbitrator, "constitutes a broad delegation of the question of arbitrability to the arbitrator." *See* Ex. 7, at ¶¶ 8-9 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). These conclusions are both obvious and irrelevant. The question is not whether Great American has entered a valid and enforceable arbitration agreement with ***any party***; rather,

the inquiry is **whether Gallagher is a party** to an existing arbitration agreement. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) ("In deciding whether to compel arbitration, a court must first decide whether **the parties** agreed to arbitrate.") (emphasis added). And there is no dispute that Great American and UMB delegated the question of arbitrability to the arbitrator. The point is that **Gallagher never did so**.

At Great American's urging, the arbitrator relied on *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136 (3d Cir. 2022) in holding that he had authority to decide whether Gallagher agreed to arbitrate. *See* Ex. 7, at ¶ 12. But in *Zirpoli,* the party seeking to avoid arbitration was a signatory to the agreement. The question was not whether a non-signatory to an arbitration agreement could be compelled to arbitrate, but rather whether the non-signatory (who was an assignee of the agreement), could enforce the arbitration agreement against the party who signed it. Thus, *Zirpoli* merely stands for the principle that where *a signatory* to an arbitration agreement delegates the question of arbitrability to the arbitrator, that signatory cannot avoid what it had already agreed to—a point that is inapposite here.

Unsurprisingly, the arbitrator's Order failed to cite a single case—and the undersigned counsel's research revealed none—endorsing the theory that an arbitrator may decide whether a non-signatory is subject to an arbitration agreement. By contrast, courts have routinely held that this determination is to be made by the court because the issue "'can't logically be resolved by the arbitrators.'" *See, e.g.*, *CCC Info. Servs. Inc. v. Tractable Inc.*, No. 18 C 7246, 2019 WL 2011092, at *2 (N.D. Ill. May 7, 2019), *aff'd sub nom. CCC Intelligent Sols. Inc. v. Tractable Inc.,* 36 F.4th 721 (7th Cir. 2022) (quoting *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001)); *Kwatinetz v. Mason*, 356 F. Supp. 3d 343, 347-48 (S.D.N.Y. 2018) (holding that "petitioners are not signatories to the employment agreement," so "the employment agreement is

not a 'clear and unmistakable agreement to arbitrate' on their part," and "whether the petitioners are subject to the arbitration agreement is a question for the Court."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 467 (S.D.N.Y. 2018) (holding that "whether [the non-signatory] is to be a party to the [arbitration agreement] is an issue for judicial determination first").

For example, in *First Options of Chicago, Inc. v. Kaplan*, the Kaplans and their wholly owned investment company had agreed to a transaction with First Options memorialized in a set of four documents. 514 U.S. 938, 940 (1995). The Kaplans were not signatories to any document containing an arbitration clause. *Id.* at 941. The arbitration panel nevertheless entered an award against the Kaplans, which the Third Circuit reversed and vacated on appeal. In affirming the Third Circuit, the Supreme Court explained: "because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration, the Court of Appeals was correct in finding that the arbitrability of the Kaplan/First Options dispute was subject to independent review by the courts." *Id.* at 947.

Like the Kaplans, Gallagher never agreed to submit the question of arbitrability to the arbitrator. Accordingly, the arbitrator lacked authority to rule on Great American's request to join Gallagher, and the order purporting to join Gallagher is facially invalid.

        2.     Gallagher Cannot Be Forced To Join An Arbitration To Which It Never Consented.

Because the order joining Gallagher to the Arbitration is facially invalid, this Court need not even reach the substantive question of arbitrability to grant Gallagher's Motion, enjoin the Arbitration as to Gallagher, and preserve the status quo. Nonetheless, should the Court wish to reach the substantive issue of arbitrability, Gallagher briefly addresses the issue (and the arbitrator's flawed reasoning) below.

"It is a 'bedrock principle' that 'an arbitration agreement generally cannot bind a non-signatory.'" *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024). The arbitrator ignored this bedrock principle and instead determined that Gallagher could be bound by an arbitration agreement based on two theories: (1) Gallagher directly benefitted from the Policy, and (2) Gallagher assumed obligations under the Policy. Neither of these theories—which must be "narrowly construe[d]" under "ordinary principles of contract and agency law," *see Kwatinetz*, 356 F. Supp. 3d at 348—provides a basis to compel Gallagher's participation in the Arbitration.

a.     *The Direct Benefits Theory Of Estoppel Does Not Apply to Gallagher.*

The arbitrator observed that the Policy is governed by New York law, which recognizes the "direct benefits theory of estoppel." Ex. 7, at ¶ 14. Under this theory, "a nonsignatory may be compelled to arbitrate where the non-signatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Id.* (quoting *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 635, 999 N.E.2d 1130 (2013)).

As an initial matter, because Gallagher is not a party to the Policy, it goes without saying that Gallagher did not agree to be bound by the New York choice of law provision in the Policy. But in any event, New York courts have consistently held that a benefit derived by a non-signatory from the contractual relationship between two parties—as opposed to a benefit from the contract itself—is insufficient to compel the non-signatory to arbitrate, even if the non-signatory aids in facilitating the contract. *See, e.g.*, *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ("[T]he benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."). Put differently, the contract containing the arbitration agreement must be the sole and direct source of the benefit to the nonsignatory.  Indeed, the very

case relied upon by the arbitrator and Great American makes that clear. *Belzberg*, 21 N.Y.3d at 631-32.

What is more, courts have already duly considered and correctly rejected the same theory of direct benefits estoppel in the same factual circumstances present here. In *Beelman*, an insured sought to compel non-signatory brokers, who procured the policy between the insured and National Union, to arbitrate claims pursuant to the policy. *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312 (S.D.N.Y. 2016). The insured argued the brokers' commission from the insurer constituted a direct benefit from the insurance policy. The court held otherwise, finding that, although the broker received a commission as a result of the parties' agreement (as Gallagher did here), the benefit stemmed from: (1) the creation of the contractual relationship between the insurer and insured, and (2) the brokerage agreement between insurer and the brokers, rather than from the insurance policy itself. *Id.* at 323.

*Beelman* is directly on point. Here, Gallagher's right to commissions arises solely from the Producer Agreement and Underwriting Addendum between Gallagher and Great American. Neither contain an arbitration provision. Like the commissions in *Beelman*, the fee Gallagher received from Great American for referring UMB constitutes an indirect benefit stemming from the creation of the contractual relationship between Great American and UMB. It is not a direct benefit from the Policy itself. Indeed, the Policy itself expressly states that "nothing expressed or implied in this Policy is intended to confer any … benefits" on anyone other than Great American and UMB. *See* Ex. 3, at 22.  And when a benefit simply flows downstream to the non-signatory through exploitation of the contractual relationship rather than directly deriving from the agreement itself, "the benefit is too attenuated and indirect to force arbitration under an estoppel

theory." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005); *Coatney*, 93 F.4th at 1029.

In short, Gallagher's receipt of a commission as the "producer" or "broker" of the Policy does not constitute a direct benefit from the Policy itself—it is an indirect benefit from the contractual relationship between Great American and UMB. Even if New York law governed this issue, the direct benefits theory of estoppel cannot be used to bind Gallagher to an arbitration agreement it did not sign.[3]

> **b.** *Gallagher Did Not Assume The Obligation To Arbitrate Under The Policy.*

The arbitrator also adopted Great American's theory that, because UMB delegated certain of its duties under the Policy to Newlight, Newlight's acceptance of those duties constituted Gallagher's "implied assumption of the obligation to arbitrate." *See* Ex. 7, at ¶¶ 23-26. The arbitrator's holding was wrong, and it was based in part on a fundamental misreading of the Seventh Circuit's decision in *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555 (7th Cir. 2021).

As a starting point, *Meinders*, like the *Zirpoli* case discussed above, involved a non-signatory seeking to compel arbitration against a signatory to the arbitration agreement. That is a fundamental distinction. It is well-established that "a court will estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," but "the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated the nonsignatory is with another signing party." *Kwatinetz*, 356 F. Supp. 3d at 349

---

[3] The arbitrator also relied on Newlight's receipt of compensation pursuant to *other* agreements executed as part of the transaction. But as explained above, none of those agreements contained arbitration clauses. *See supra* at 4-5.

15

(quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001)) (internal quotations omitted); *see also Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) ("As these cases indicate, the circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory…") (emphasis in original).

In any event, the Seventh Circuit also acknowledged that implicit assumption of the obligation to arbitrate only occurs when a delegating party "***transfers the entire contract***, assigning rights as well as delegating performance." *Meinders*, 7 F.4th at 562–63 (emphasis added). In *Meinders*, the party seeking to enforce the arbitration provision (United Healthcare) assumed ***all*** of the original signatory's (its wholly owned subsidiary) obligations under the agreement it had with the party seeking to avoid arbitration. *Id.* In other words, United Healthcare was performing under a contract that its subsidiary signed and thus assumed its subsidiary's right to enforce the arbitration provision. The party resisting the arbitration—Dr. Mienders—had accepted United Healthcare's performance for years, and he could not avoid the arbitration agreement ***that he signed*** simply because United Healthcare's subsidiary was the counterparty. The facts of *Meinders* could not be further from the case at bar; Gallagher did not enter an assignment or assumption agreement with UMB or Great American, had no power to enforce any rights under the Policy between Great American and UMB, and did not receive the fundamental consideration of the Policy— that is, insurance coverage or insurance premiums.

Even if Gallagher somehow assumed the obligation to arbitrate ***under the Policy***, the Arbitration is ***not*** proceeding under the provisions of the Policy. Rather, by signing the amended arbitration agreement—including selecting a sole arbitrator instead of a panel of three and stripping Gallagher of any say on any aspect of such proceedings—Great American and UMB consciously chose to deviate from the arbitration clause of the Policy. Allowing Great American to also claim

the entities are still bound by the original arbitration obligations—despite proceeding on new, different terms to which Gallagher refused to consent—would turn every traditional principle of contract law on its head. Taking the example to the extreme, suppose Great American and UMB had chosen a disgruntled ex-Gallagher employee, rather than Mr. Rosen, to serve as the sole arbitrator for this dispute. Great American's position is that Gallagher is somehow bound to arbitrate in that setting. That is obviously not the law.

### C. Gallagher Does Not Have An Adequate Remedy At Law And Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted.

Courts in this District have recognized that "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm." *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827, at *5 (N.D. Ill. Feb 17, 2009) (citations omitted). That is because "[f]orcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes." *Id.* (citation omitted); *see Ryan Beck & Co., Inc. v. Campbell*, No. 02 C 7016, 2002 WL 31696792, at *6 (N.D. Ill. Dec. 2, 2002) (movant "will suffer irreparable harm if the preliminary injunction is denied and it is forced to continue with an arbitration to which it did not contractually submit itself"); *Maryland Casualty Co. v. Realty Advisory Board*, 107 F.3d 979, 985 (2d Cir. 1997) (finding that party "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"). Accordingly, Gallagher will suffer irreparable harm if it is forced to join the Arbitration.[4]

---

[4] Indeed, on April 21, 2025, UMB issued three notices of deposition to AJG, Gallagher Risk, and GIPS, purporting to require Gallagher, as a "party" to the arbitration, to produce corporate representatives to sit for a deposition. The irreparable harm is obvious: Gallagher is forced to either engage as a party deponent in a forum in which it never agreed to litigate, or ignore the deposition notices and suffer the attendant adverse consequences.

**D. The Balance Of Hardships And Public Interest Favor Injunctive Relief.**

In balancing hardships, courts apply "the 'sliding scale' approach: the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs*, 971 F.2d at 12. As established above, Gallagher has a strong likelihood of success on the merits to enjoin its forced participation in the Arbitration. Accordingly, the balance of harms need not decisively weigh in Gallagher's favor.

Notwithstanding, balance of harms weighs heavily in favor of injunctive relief here. As Courts in this District have recognized, "[t]he harm that [Great American] would suffer if the Court issues an erroneous preliminary injunction would be a delay in the arbitration proceedings," but "[o]n the other hand, and in light of [Gallagher's] likelihood of success on the merits, the harm that [Gallagher] would suffer if the injunction were erroneously denied would be irreparable, as [Gallagher] would have been compelled to arbitrate a dispute that it did not agree to arbitrate." *Duran*, 2009 WL 393827, at *6. Moreover, a preliminary injunction serves the public interest because it "will minimize the risk that the parties will suffer the inconvenience, cost, and delay associated with a protracted arbitration only to have any resulting award vacated for want of jurisdiction." *Id.*

**II. The Arbitration Summons Compels Gallagher To Engage In Improper Pre-Hearing Discovery And Should Be Quashed.**

The Summons, which purports to command pre-hearing document production and a corporate representative deposition from Gallagher, is invalid and unenforceable, and it should be quashed.

Section 7 of the FAA governs an arbitrator's ability to summon a nonparty such as Gallagher to appear as a witness and produce documents. *See* 9 U.S.C. § 7. And that authority is

limited. District courts within the Seventh Circuit have consistently recognized that an arbitrator may only compel a nonparty to testify at an arbitration hearing where the arbitrator is *physically* present and to produce documents at that time; the arbitrator may not compel a nonparty to participate in *pre-hearing* discovery outside the physical presence of the arbitrator. *See, e.g.*, *Ware v. C.D. Peacock, Inc.*, No. 10 C 2587, 2010 WL 1856021, at *3 (N.D. Ill. May 7, 2010) ("Section 7 of the FAA does not authorize arbitrators to issue subpoenas for depositions of non-parties outside the physical presence of the arbitrator"); *Matria Healthcare, LLC v. Duthie*, 584 F. Supp. 2d 1078, 1083 (N.D. Ill. 2008) ("[N]either the text nor the history of § 7 of the FAA supports Matria's argument that a non-party to an arbitration can be compelled to participate in discovery without his consent."); *Next Level Plan. & Wealth Mgmt., LLC v. Prudential Ins. Co. of Am.*, No. 18-MC-65, No. 18-MC-65, 2019 WL 585672, at *5 (E.D. Wis. Feb. 13, 2019), *report and recommendation adopted*, No. 18-MC-65-PP, 2019 WL 1466049 (E.D. Wis. Apr. 3, 2019) (refusing to enforce arbitration summons for requiring appearance and production for telephonic evidentiary hearing); *see also In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 2257179, at *4 (N.D. Ill. June 23, 2022) (noting "the weight of authority establishing that a discovery subpoena issued by an arbitrator against non-parties would not be enforceable."). In other words, the arbitrator's authority is limited to issuing what is akin to a trial subpoena—not a discovery subpoena commanding deposition testimony and pre-hearing document production.

This is the view not only of courts within the Circuit, but of the majority of the Courts of Appeals which have addressed the issue. *See Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008) ("The language of section 7 is straightforward and unambiguous. Documents are only discoverable in arbitration when brought before arbitrators by a testifying witness."); *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d Cir. 2004)

(Alito, J.) ("Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time."); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275 (4th Cir. 1999) ("Nowhere does the FAA grant an arbitrator the authority to order non-parties to appear at depositions, or the authority to demand that non-parties provide the litigating parties with documents during prehearing discovery. By its own terms, the FAA's subpoena authority is defined as the power of the arbitration panel to compel non-parties to appear 'before them.'"); *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("The text of section 7 grants an arbitrator no freestanding power to order third parties to produce documents other than in the context of a hearing."); *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1160 (11th Cir. 2019) ("[T]he plain meaning of [Section 7] does not permit pre-hearing discovery from non-parties.").

The Summons issued in this case plainly exceeds the authority granted by Section 7. Rather than commanding Gallagher's testimony and document production at an arbitration hearing in the physical presence of an arbitrator, it commands Gallagher to produce documents and "to appear as a witness at a deposition upon oral examination taken by Claimant Great American" at the offices of a court reporting service in Chicago. Ex. 8, at 2. A non-party cannot be compelled to participate in this type of pre-hearing discovery under Section 7.

That the Summons seeks testimony "in accordance with Federal Rule of Civil Procedure 30(b)(6)," renders it even more problematic, and further confirms it is an improper discovery request rather than a trial subpoena seeking testimony of a person with personal knowledge. Indeed, Rule 30(b)(6) exclusively applies to depositions—not trial testimony—providing that a party may name an entity "*as the deponent*" and "describe with reasonable particularity the matters

for examination." Fed. R. Civ. P. 30(b)(6) (emphasis added). There is no 30(b)(6) equivalent for trial testimony under Rule 45. Nor does the FAA provide for a 30(b)(6)-type procedure for depositions of non-party entities. There is simply no basis under the statute to issue such a demand.

The undersigned counsel's research has not revealed a single case in which a court has interpreted the FAA to permit the type of discovery the Summons commands here. This Court should not be the first. The Summons does not comply with the FAA, it is invalid and unenforceable, and it should be quashed.

Finally, even if the type of third-party discovery sought by the Summons were permitted under Section 7 (which it is not), the Summons should be quashed for independent reasons. It is procedurally defective in multiple ways. The FAA requires that the Summons "shall be served in the same manner as subpoenas to appear and testify before the court." 9 U.S.C. § 7. In other words, a summons issued under Section 7 must comply with Federal Rule of Civil Procedure 45. Yet Great American did not tender witness fees and reasonably estimated mileage when it served the summons upon Gallagher, as required by Rule 45(b), nor did the text of the Summons include the text of Rule 45(d) and (e), as required by Rule 45(a)(1)(iv).

More importantly, the documents and deposition testimony requested would impose an extraordinary and undue burden upon Gallagher that is disproportionate to the needs of the case. The 39 deposition topics, *see* Ex. 8, at 3-7, are exceedingly broad and would require Gallagher to expend a tremendous amount of resources educating and preparing multiple witnesses to testify. Likewise, the 37 document requests are overbroad, essentially amounting to requests for "any and all" documents related to multiple parties and multiple transactions over a multi-year period. *Id.* at 10-15. For these reasons as well, the Summons should be quashed.

## **CONCLUSION**

For the foregoing reasons, Gallagher respectfully requests that this Court enter an order

temporarily restraining and preliminarily enjoining Gallagher from being compelled to participate in the Arbitration between Great American and UMB and quashing the defective Arbitration Summons to Produce Documents and Testify.

Dated: April 24, 2025

*/s/ Ronald S. Safer*

Ronald S. Safer
Eli J. Litoff
Shaun Zhang
RILEY SAFER HOLMES AND CANCILA, LLP
1 S. Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8700
rsafer@rshc-law.com
elitoff@rshc-law.com
szhang@rshc-law.com

Michael C. Kasdin
Jesse L. Byam-Katzman
Foley & Lardner LLP
321 N. Clark Street, Suite 3000
Chicago, IL 60654
(312) 832-4500
mkasdin@foley.com
JByam-Katzman@foley.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document has been furnished via E-Mail to the following:

James P. Ruggeri
Edward B. Parks, II
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006
(202) 984-1400
jruggeri@ruggerilaw.com
eparks@ruggerilaw.com

Alexander E. Potente
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, CA 94111
(415) 365-9800
alexpotente@clydeco.us

*Counsel for Great American E&S Insurance Company*

Peter M. Gillon
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
(202) 663-9249
peter.gillon@pillsburylaw.com
Edward.flanders@pillsburylaw.com

*Counsel for UMB Bank, National Association*

Peter K. Rosen
JAMS, INC.
prosen@jamsadr.com

*Arbitrator*

Dated: April 24, 2025

*/s/ Eli J. Litoff*