**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO.; ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, LLC; and GALLAGHER IP SOLUTIONS LLC, | |
| Plaintiffs, | Case No. 1:25-cv-04474 |
| v. | Hon. Matthew F. Kennelly |
| GREAT AMERICAN E&S INSURANCE COMPANY, | |
| Defendant. | |

**GREAT AMERICAN'S OPPOSITION TO GALLAGHER'S EMERGENCY**
**MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ........................................................................................................................ 2

   I.   GALLAGHER IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER OR
A PRELIMINARY INJUNCTION. .................................................................................. 2

     A.   Gallagher Is Not Entitled to a TRO. ............................................................... 2

     B.   Gallagher Is Not Entitled to a Preliminary Injunction. .................................... 4

   II.   GALLAGHER'S OBJECTIONS TO GREAT AMERICAN'S DISCOVERY REQUESTS
ARE IMPROPER. .......................................................................................................... 10

CONCLUSION ................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                         **Page(s)**

*Alliance Healthcare Services, Inc. v. Argonaut Private Equity, LLC,*
    804 F. Supp. 2d 808 (N.D. Ill. 2011)..............................................................1 n.1

*Belzberg v. Verus Investments Holdings Inc.,*
    21 N.Y.3d 626 (2013).....................................................................................8-9

*Briggs & Stratton Corp. v. Local 232,*
    36 F.3d 712 (7th Cir.1994)..................................................................................6

*Capgemini Financial Services USA Inc. v. Infosys Ltd.,*
    No. 14 C 464, 2014 WL 340206
    (N.D. Ill. Jan. 30, 2014) ......................................................................................3

*Contec Corp. v. Remote Solution, Co., Ltd.,*
    398 F.3d 205 (2d Cir. 2005) ...............................................................................8

*Crue v. Aiken,*
    137 F. Supp. 2d 1076 (C.D. Ill. 2001) ...............................................................2

*E.E.O.C. v. State Farm Mutual Automobile Insurance Co.,*
    No. C 81-4727 TEH, 1982 WL 213
    (N.D. Cal. Mar. 11, 1982) .............................................................................13 n.4

*Eberhardt v. Village of Tinley Park,*
    No. 1:20-CV-01171, 2021 WL 4340530
    (N.D. Ill. Mar. 2, 2021) .......................................................................................3

*Evergreen Pharmacy, Inc. v. Garland,*
    621 F. Supp. 3d 861 (N.D. Ill. 2022) .................................................................3

*GEFT Outdoors, LLC v. City of Westfield,*
    922 F.3d 357 (7th Cir. 2019) ..............................................................................5

*Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v.
Chicago Tribune Co.,*
    779 F.2d 13 (7th Cir. 1985) ................................................................................7

*Green v. G. Heileman Brewing Co. Inc.,*
    755 F. Supp. 786 (N.D. Ill. 1991) ......................................................................2

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    586 U.S. 63 (2019)...........................................................................................7-8

*Interactive Brokers, LLC v. Duran*,
No. 08-CV-6813, 2009 WL 393827
(N.D. Ill. Feb 17, 2009)............................................................................6

*Jones v. Butler*,
No. 14-CV-00846-NJR, 2014 WL 5358976
(S.D. Ill. Oct. 20, 2014) .............................................................................2

*Little v. JB Pritzker for Governor*,
No. 18 C 6954, 2020 WL 1939358
(N.D. Ill. Apr. 22, 2020)...........................................................................11

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)....................................................................................4

*Meek v. Archibald & Meek, Inc.*,
No. 21-CV-02397, 2021 WL 2036535
(N.D. Ill. May 21, 2021) ............................................................................3

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
49 F.3d 323 (7th Cir. 1995)...................................................................1 n.1

*Odfjell ASA v. Celanese AG*,
348 F. Supp. 2d 283 (S.D.N.Y. 2004) ......................................................14

*Parker v. Four Seasons Hotels, Ltd.*,
291 F.R.D. 181 (N.D. Ill. 2013) ...............................................................11

*Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*,
No. 12-CV-05105, 2017 WL 3922175
(N.D. Ill. Sept. 7, 2017) ...........................................................................11

*PsyBio Therapeutics, Inc. v. Corbin*,
No. 20 C 3340, 2021 WL 271217
(N.D. Ill. Jan. 27, 2021) .............................................................................3

*Renegotiation Board v. Bannercraft Clothing Co., Inc.*,
415 U.S. 1 (1974)......................................................................................5-6

*Revis v. Schwartz*,
38 N.Y.3d 939 (2022)...............................................................................7-8

*Roman v. City of Chicago, et al.*,
No. 20 C 1717, 2023 WL 121765
(N.D. Ill. 2023)..........................................................................................11

*Samayoa by Samayoa v. Chicago Board of Education*,
    783 F.2d 102 (7th Cir. 1986) ................................................................................2

*Snap-On Tools Co. v. C/Net, Inc.*,
    No. 97C5803, 1997 WL 33483145
    (N.D. Ill. Oct. 3, 1997) ..........................................................................................3

*Snyder v. Ocwen Loan Servicing, LLC*,
    258 F. Supp. 3d 893 (N.D. Ill. 2017) ...................................................................5

*Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.)*,
    631 F.3d 869 (7th Cir. 2011) ................................................................................6

*USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*,
    402 F. Supp. 3d 427 (N.D. Ill. 2019) ...................................................................2

*Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*,
    833 F. Supp. 2d 870 (N.D. Ill. 2011) ...................................................................3

*Washington National Insurance Co. v. OBEX Group LLC*,
    958 F.3d 126 (2d Cir. 2020) ......................................................................... 13-14

## Statutes

9 U.S.C. § 4 ...........................................................................................................1 n. 1, 5

9 U.S.C. § 10(a)(4) ........................................................................................................5

28 U.S.C. § 1332 .....................................................................................................1 n.1

## Rules

LR 37.2 .........................................................................................................................11

In response to the emergency motion ("Motion") of Plaintiffs Arthur J. Gallagher & Co.,

Arthur J. Gallagher Risk Management Services, LLC, and Gallagher IP Solutions LLC

(collectively, "Gallagher")[1] for temporary and preliminary injunctive relief, Great American

E&S Insurance Company ("Great American") respectfully submits this opposition.

This case does not present a genuine emergency, nor does it warrant injunctive relief of

any kind. A party may be compelled to arbitrate when it knowingly exploits the benefits of an

agreement containing an arbitration clause and receives benefits flowing directly from the

agreement. That is the situation here. Great American alleged, the Arbitrator found, and

Gallagher does not seriously dispute, that Gallagher received direct benefits under the insurance

policy that contains the arbitration provision. Peter Rosen, a veteran litigator and accomplished

JAMS arbitrator [https://www.jamsadr.com/peter-rosen/], ordered Gallagher's joinder to the

arbitration pursuant to a clear statement of findings. Moreover, Seventh Circuit law holds that

the correct remedy for a purportedly flawed arbitration is a proceeding under the Federal

Arbitration Act to deny enforcement of the award. Neither a party's claim that it is deprived of

its proper forum, nor its claim of delay and expense, constitute irreparable injury warranting an

injunction against the arbitration.

---

[1]     Preliminarily, Great American notes issues with both diversity jurisdiction and venue for this action. Gallagher does not allege the citizenship of each of the members of Arthur J. Gallagher Risk Management Services, LLC and Gallagher IP Solutions LLC. As a result, Great American cannot evaluate whether this Court has diversity jurisdiction under 28 U.S.C. § 1332 and reserves its right to challenge jurisdiction if the parties turn out not to be diverse. Moreover, venue is improper in this federal district court under 9 U.S.C. § 4. "[T]he directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Section 7, too, is quite clear that only a district court where the arbitrator is sitting can invoke its powers. *Alliance Healthcare Servs., Inc. v. Argonaut Priv. Equity, LLC*, 804 F. Supp. 2d 808, 813 (N.D. Ill. 2011) ("FAA section 7 permits only a court in the district where the arbitration is being conducted to enforce an arbitration subpoena"). This case is properly in New York, where the arbitration is located.

<u>**ARGUMENT**</u>

**I.     GALLAGHER IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION.**

In the Seventh Circuit, the standards for granting a temporary restraining order and preliminary injunction are the same. *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019) (collecting cases). However, the two remedies are not identical: just as "preliminary injunctions have more of an emergency character than the seeking of a permanent injunction," *Samayoa by Samayoa v. Chicago Bd. of Educ.*, 783 F.2d 102, 104 (7th Cir. 1986), so temporary restraining orders have a still more pronounced emergency character. *See Jones v. Butler*, No. 14-CV-00846-NJR, 2014 WL 5358976, at *3 (S.D. Ill. Oct. 20, 2014) ("a motion for preliminary injunction is of a less urgent nature than a motion for temporary restraining order . . . ."); *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082 (C.D. Ill. 2001) ("A temporary restraining order ("TRO") is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction."). Indeed, "[a] temporary restraining order is designed to prevent imminent injury." *Green v. G. Heileman Brewing Co., Inc.*, 755 F. Supp. 786, 788 n.1 (N.D. Ill. 1991). This emergency character requires that requests for temporary restraining orders be heard on an expedited basis, unlike a motion for a preliminary injunction. Because of these differences, we will separately address Gallagher's request for a TRO and its request for a preliminary injunction.

**A.     Gallagher Is Not Entitled to a TRO.**

Gallagher seeks a TRO and has specifically captioned its motion as one for "emergency" relief. The website of the Northern District describes what qualifies as an emergency:

> A party requiring immediate relief may file an emergency motion in very limited circumstances and **may not be filed without prior leave**. To qualify as an "emergency," a motion must arise from **an unforeseen**

2

**circumstance that arises suddenly and unexpectedly and requires
immediate action in order to avoid serious or irreparable harm to one
or more of the parties**.

*See* https://www.ilnd.uscourts.gov/judge-cmp-detail.aspx?cmpid=392 (emphasis in original).

Courts in the Seventh Circuit have not hesitated to deny a TRO on the grounds that no real emergency exists. *See Capgemini Fin. Servs. USA Inc. v. Infosys Ltd.*, No. 14 C 464, 2014 WL 340206, at *4 (N.D. Ill. Jan. 30, 2014) ("In December 2013, Capgemini could be reasonably sure [of the facts underlying its claim.] Still, this "emergency" motion for a TRO was not filed for another month."); *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 271217, at *4 (N.D. Ill. Jan. 27, 2021) (plaintiff's "fail[ure] to act immediately on this 'emergency relief,'" demonstrated "the fact that it is not an emergency"); *Meek v. Archibald & Meek, Inc.*, No. 21-CV-02397, 2021 WL 2036535, at *3 (N.D. Ill. May 21, 2021) ("While Meek seeks a temporary restraining order, the motion fails to reveal any emergency."); *Snap-On Tools Co. v. C/Net, Inc.*, No. 97C5803, 1997 WL 33483145, at *11 (N.D. Ill. Oct. 3, 1997) ("The lack of urgency and the inexcusable delay dictate the non-issuance of a TRO."); *Evergreen Pharmacy, Inc. v. Garland*, 621 F. Supp. 3d 861, 868 (N.D. Ill. 2022) ("Evergreen's motion did not present an emergency as required for issuance of a TRO under Rule 65(b)"); *Eberhardt v. Vill. of Tinley Park*, No. 1:20-CV-01171, 2021 WL 4340530, at *2 (N.D. Ill. Mar. 2, 2021) ("Plaintiff's failure to explain the nature of the emergency warrants denial of Plaintiff's TRO motion."); *Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*, 833 F. Supp. 2d 870, 877 (N.D. Ill. 2011) ("[t]he balance of harms clearly weighs against entering a TRO where Vienna Beef has not shown that an emergency exists").

From a review of the facts, the Court will see that Gallagher's motion does not concern a genuine emergency. Great American initiated an arbitration against UMB Bank on June 20, 2024. Because it was obvious that a complete resolution of all claims was impossible in

Gallagher's absence, Great American repeatedly asked Gallagher to join the arbitration voluntarily. Gallagher considered the request for months before rejecting it, prompting Great American to file a motion with the Arbitrator to join Gallagher on January 27, 2025, three months ago. Meanwhile, on February 10, 2025, Gallagher submitted an eight-page, single-spaced letter to the Arbitrator detailing its objections to being joined and reserving the right to seek an injunction if the Arbitrator granted the motion. After a hearing which Gallagher attended while reserving its rights to seek relief in court, the Arbitrator notified the parties on March 28, 2025 in a written email that he would grant Great American's motion to join Gallagher. He later followed up his decision with a written opinion making findings and conclusions.

Now, Gallagher appears before the Court claiming to be imminently threatened with harm and in grave need of relief – and not just prompt relief, but immediate relief on an emergency basis. But although it seeks the emergency relief represented by a TRO, and it labels its motion as an emergency motion, nowhere does it show imminent need: the words "emergency," "urgent," and "imminent" are absent. Accordingly, this is not an appropriate case for the issuance of a TRO.

### B. Gallagher Is Not Entitled to a Preliminary Injunction.

As the Supreme Court has stated, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). The Seventh Circuit has set out the standard:

> To obtain a preliminary injunction, a plaintiff must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm. If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction. However, if the plaintiff passes that threshold, the court must weigh the harm that the plaintiff will suffer absent an injunction against

> the harm to the defendant from an injunction, and consider whether an
> injunction is in the public interest. This Circuit employs a sliding scale
> approach for this balancing: if a plaintiff is more likely to win, the balance
> of harms can weigh less heavily in its favor, but the less likely a plaintiff is
> to win the more that balance would need to weigh in its favor.

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citations and internal quotation marks omitted). Here, Gallagher can neither meet the threshold requirement nor show that the balance of harms weighs in its favor.

**No adequate remedy at law.** Gallagher's complaint is that the Arbitrator is forcing it to participate in an arbitration without the authority to do so. But if Gallagher is right, it has an adequate remedy at law. The FAA allows a party that believes an arbitrator has acted outside the scope of its authority to seek an order vacating the award. 9 U.S.C. § 10(a)(4) ("In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers."). If Gallagher loses in the arbitration, after the hearing, it may seek to have any award vacated. Indeed, as explained in detail below, this is the preferred path for challenging an award under 9 U.S.C. § 4.

**Irreparable harm**. "Irreparable harm is defined as harm to plaintiff that cannot be fully rectified by final judgment after trial." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 913 (N.D. Ill. 2017). As stated, any harm to Gallagher can be rectified by seeking to have any award vacated. And to the extent its real complaint is that it will be forced to expend money in the arbitration, courts from the Supreme Court on down have consistently rejected that argument. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable

injury."); *Briggs & Stratton Corp. v. Local 232*, 36 F.3d 712, 714 (7th Cir. 1994) ("It is . . . established that the costs of litigation are not 'irreparable injury.'").

Gallagher relies on an unreported case for the proposition that "[f]orcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes." *See* Motion at 17 (quoting *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827, at *5 (N.D. Ill. Feb. 17, 2009)). But the Seventh Circuit has sharply rejected the exact statement on which Gallagher relies:

> **[T]he proposition that going forward with an arbitration "unalterably deprives the party of its right to select the forum"—a proposition for which the court did not cite any statute or appellate decision—is false.** Once the arbitration ends, a party that believes the proceeding flawed because the arbitrators exceeded their remit has a simple remedy: a proceeding under the Federal Arbitration Act to deny enforcement to the award . . . If the award should be set aside, litigation in the proper forum would ensue.

*Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.),* 631 F.3d 869, 872 (7th Cir. 2011) (emphasis supplied; citations omitted). Not only is the deprivation-of-forum argument false, but, as the court continued, the argument remaining to the party seeking the injunction – that it would incur the expense of an arbitration that might be set aside – was not merely meritless but frivolous:

> The only potential injury from waiting until the arbitrators have made their award is delay and the out-of-pocket costs of paying the arbitrators and legal counsel. Long ago the Supreme Court held that the delay and expense of adjudication are not "irreparable injury"—if they were, every discovery order would cause irreparable injury. We held in *PaineWebber Inc. v. Farnam,* 843 F.2d 1050 (7th Cir.1988), and *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13 (7th Cir.1985), that the sort of argument Trustmark advances in its effort to establish "irreparable injury" is frivolous.

*Id.* (citations omitted). This echoes the point the same court made earlier:

> The only harm that an order to arbitrate does is to make the party against whom the order is issued litigate a dispute in a forum not of his choosing. That is no different from the harm of being turned down on a motion to dismiss or for summary judgment, thereby being forced to try a case that one does not believe should be tried, or from the harm of being transferred to another district court or remanded to a state court . . . .

*Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Loc. No.* 2 *v. Chicago Trib. Co.*, 779 F.2d 13, 15 (7th Cir. 1985). The court then reemphasized that it is not irreparable harm that the case may turn out not to be arbitrable after all:

> [W]e decline to say that a party ordered to arbitrate can never show irreparable harm such as might support a request that the order be stayed pending appeal. But we are confident that such cases will be extraordinarily rare, that this case is not one, that employers who seek stays merely on the ground that the arbitration may turn out to be a wasted expense of time and money are whistling in the dark, and that we will not hesitate to mete out sanctions in future cases to persons who make applications for stays of arbitration in circumstances such as disclosed by the record of this case.

*Id.* at 16. For the same reasons, Gallagher cannot show it will be irreparably harmed.

**<u>Likelihood of Success</u>**. Gallagher makes two principal arguments to try to show a likelihood of success: (1) the Arbitrator did not have the authority to decide the threshold issue of arbitrability and (2) Gallagher, as a non-party to the policy, cannot be compelled to arbitrate. Both arguments are wrong.

First, the Arbitrator's decision that he had the authority to decide his jurisdiction is well-reasoned and backed by solid case law. The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). New York law is the same. *See Revis v. Schwartz*, 38 N.Y.3d 939, 940 (2022) ("gateway questions of arbitrability should be resolved by the arbitrator") (citing, *inter*

*alia*, *Henry Schein, Inc.*).  Here, the arbitration agreement commits to the arbitrator "any dispute arising out of or relating to the . . .validity of this POLICY *or this arbitration clause, including the formation or validity thereof*."  Policy at 15 (Art. 9.E.) (emphasis supplied).  That is an explicit delegation of arbitrability issues to the arbitrator.  Moreover, the Policy provides that any arbitration "will be conducted in accordance with the AAA's commercial dispute resolution procedures."  *Id.* at 16.  Under those procedures, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."  The adoption of such procedure "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005).  Gallagher accepted direct benefits and assumed obligations under the Policy, knowing of both the existence and breadth of the arbitration provision, binding it to the arbitration provision, including its deferral to the Arbitrator of the arbitrability issue.

Second, Gallagher does not dispute that under New York's well-established principles of equitable estoppel a non-party may be compelled to arbitrate when "the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement."  *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 631 (2013) (citations omitted).  A benefit is indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself.  *Id.*  In distinguishing between direct benefits, which make the nonsignatory receiving them subject to arbitration, and indirect benefits, which do not, the Court set forth this rule:

> The guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration

> clause. The mere existence of an agreement with attendant circumstances that prove advantageous to the nonsignatory would not constitute the type of direct benefits justifying compelling arbitration by a nonparty to the underlying contract.

*Id.* at 633.

Great American alleged, the Arbitrator found, and Gallagher does not seriously dispute that it received direct benefits under the Policy. The Policy confers numerous direct benefits on Gallagher. At the outset, its PIUS and Newlight divisions were paid for arranging the transaction; as the loans were outstanding, Newlight/Gallagher was paid for various servicing and monitoring tasks; if the loans defaulted and claims were made on the Policy, Newlight/Gallagher was paid for its services in marketing the collateral and minimizing losses.

And Newlight/Gallagher assumes a particularly prominent role if the loans go into default. The Policy designates both Newlight and PIUS as parties to whom notices of claim and proofs of loss are to be sent. When a loan defaults, the principal tasks are to market the collateral in order to pay off the loans and otherwise to mitigate losses. The Policy assigns those tasks to UMB Bank under Articles 7.E.1 and 7.E.3, but expressly provides those tasks may be delegated to Newlight, subject to UMB Bank's ultimate liability:

> Notwithstanding the foregoing, or any other provision of the POLICY to the contrary, the COMPANY acknowledges that the NAMED INSURED may delegate to NEWLIGHT its duties under Article 7.E.1. and 7.E.3 and, in the event of such delegation to NEWLIGHT, the NAMED INSURED will be deemed to have complied with the provisions of Article 7.E.1 and 7.E.3. In all events, the NAMED INSURED will remain liable for compliance with the terms of this POLICY.

Policy at 11-12 (Art. 7.E.).

Indeed, UMB Bank *did* delegate to Newlight/Gallagher the duties of marketing collateral and mitigating loss. Gallagher voluntarily accepted UMB Bank's delegation, knowing of the Policy's arbitration provision. Significantly, Newlight/Gallagher had the right to collect fees for

performing them – fees specified in the Policy itself. Policy at 2 (Art. 1) (definition of "COLLECTION COSTS") ("COLLECTION COSTS may include any fees and out-of-pocket expenses of NEWLIGHT that are incurred in the course of marketing or sale of the COLLATERAL"). Moreover, Newlight/Gallagher's right to collect fees for its marketing duties under the Policy was not merely a direct benefit under the Policy: Newlight/Gallagher's conduct in performing those duties lies at the heart of the parties' dispute in the arbitration.

In addition, the Policy provides that, if the costs of selling the collateral "include any amount payable to NEWLIGHT that have not been paid," Great American will deduct such amount from the amount owed to UMB Bank "and pay such amounts directly to NEWLIGHT." In short, the Policy creates a direct right of recovery for Newlight/Gallagher. Policy at 10 (Art. 7.C.).

Further, the Policy provides that, if UMB Bank seeks to assign its rights under the Policy, Newlight/Gallagher must provide its express written consent. Policy at 15 (Art. 9.C.).

These rights and benefits flow to Newlight/Gallagher directly from the Policy itself, not indirectly. As a result, the Arbitrator correctly found that Gallagher can be compelled to arbitrate, and Gallagher cannot show a likelihood of success on the merits.

## II. GALLAGHER'S OBJECTIONS TO GREAT AMERICAN'S DISCOVERY REQUESTS ARE IMPROPER.

Gallagher also moves – again, on an emergency basis – to quash the arbitration subpoena Great American served on Gallagher three months ago. The Court should decline to rule on that motion because if the Court rejects Gallagher's request to enjoin its participation in the arbitration, the issue will be mooted and, if not, the issue is one for the Arbitrator under FAA

Section 7.  In addition, Gallagher did not even attempt to comply with Local Rule 37.2, which is an independent reason for the Court to deny the motion.

Local Rule 37.2 states, in relevant part:

> [T]his court shall hereafter refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's.

Local Rule 37.2 applies to motions to quash under Rule 45.  *See generally Roman v. City of Chicago, et al.*, 2023 WL 121765 (N.D. Ill. Jan. 6, 2023); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181 (N.D. Ill. 2013).  This Court discourages discovery motions and "will not hear or consider any discovery motion unless the movant has complied with the 'meet and confer' requirement of Local Rule 37.2.  The motion must state with specificity when and how the movant complied with Local Rule 37.2."[2]  The Court could properly deny Gallagher's requests to enjoin and/or quash the Summons for the lack of meet and confer alone.  *See, e.g.*, *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, No. 12-CV-05105, 2017 WL 3922175, at *4–*5 (N.D. Ill. Sept. 7, 2017) ("By requiring parties to confer, Local Rule 37.2 attempts to weed out disputes that can be amicably resolved without judicial intervention . . . PHI's Rule 37(c)(1) motion must therefore be denied for failing to comply with Local Rule 37.2 alone."); *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *7 (N.D. Ill. Apr. 22, 2020) ("The failure to comply with Local Rule 37.2, which applies to motions to enforce a subpoena as well as motions seeking responses to interrogatories and document production (*Parker*, 291 F.R.D. at 184), is in itself grounds to deny a discovery motion.").

---

[2]      https://www.ilnd.uscourts.gov/judge_display.php?LastName=Kennelly (Case Procedures – Discovery Motions).

In February 2025, the Arbitrator granted Great American's request for subpoenas seeking discovery from Gallagher and Mr. Agiato as non-parties. Great American served a subpoena on Gallagher's counsel on February 28, 2025; counsel confirmed that he was authorized to accept service three days later. The subpoena called for Gallagher to produce documents by April 2, 2025, thirty days after Gallagher accepted service. After that day came and went without any response from Gallagher, Great American reached out on April 3, asking when Gallagher would be producing the documents. Gallagher failed to respond, causing Great American to follow up in writing two more times on April 7 and April 9. Gallagher finally responded on April 10, 2025 with the following email, quoted in full below:

> Thank you for the email. We have reviewed Great American's summons for documents and deposition testimony, along with relevant authority and have **not identified anything to suggest that the requests for documents and deposition testimony are valid or enforceable against the Gallagher entities.** Naturally, the analysis may change if the Gallagher entities are required to participate in the arbitration. As you may have seen from my email a few minutes ago, the Gallagher entities will be challenging the arbitrator's ruling on Great American's motion for joinder in a court of competent jurisdiction upon receipt of the arbitrator's written decision. **The Gallagher entities do not intend to respond to the summons until we have finality on the issue of joinder.**

Email from Jesse L. Byam-Katzman to Edward B. Parks, II (Apr. 10, 2025) (emphasis supplied).[3] This response is remarkable in three respects. First, Gallagher's refusal to respond to the subpoena had nothing to do with whether the Arbitrator's decision to join Gallagher was right or wrong. The subpoena was issued to Gallagher *as a nonparty*, before the Arbitrator addressed the motion to join Gallagher. Yet, without argument or citation, Gallagher dismisses its obligation to respond to a subpoena. Second, Gallagher takes the position that it has no

---

[3]   A true copy of the Email from Jesse L. Byam-Katzman to Edward B. Parks, II (Apr. 10, 2025) is attached to the April 29, 2025 Affidavit of Edward B. Parks, II as Exhibit 1. The April 29, 2025 Affidavit of Edward B. Parks, II is attached as Exhibit A.

obligation to respond to any discovery request until there is "finality" on the joinder issue. But this makes no sense: again, the subpoena was issued to Gallagher as a nonparty, and therefore if it succeeds in enjoining the arbitration, it will be in the same position as it was when the subpoena was issued; if it fails, its discovery obligations as a party will hardly diminish. In short, Gallagher's position is that, while there is no finality as to whether it has the discovery obligation of a nonparty or the greater obligations of a party, *it has no obligations at all*. Third, Gallagher's response shows no concern for compliance with discovery deadlines. The date for compliance has come and gone. Meanwhile, Great American and UMB need to conduct discovery in their arbitration.

Importantly for the Court's consideration of Gallagher's "emergency" motion, Gallagher's rejection of Great American's subpoena was Gallagher's one and only communication about the subpoena before filing its "emergency" motion seeking an extraordinary injunction against the subpoena. Gallagher never told Great American about the objections it raises in its motion, never sought relief from the Arbitrator if it believed it was appropriate to do so,[4] and never attempted to meet and confer with Great American.

Had Gallagher attempted to meet and confer, Great American would have worked with Gallagher on the timing of any production and explained why Gallagher's attempt to invoke Rule 45 is off the mark. In *Washington National Insurance Co. v. OBEX Group LLC*, 958 F.3d 126

---

[4]     The Court could also deny Gallagher's motion because it failed to seek relief from the Arbitrator before filing this motion. *See E.E.O.C. v. State Farm Mut. Auto. Ins. Co.*, No. C 81-4727 TEH, 1982 WL 213, at *1 (N.D. Cal. Mar. 11, 1982) ("Courts consistently have held . . . that a District Court should not enjoin an administrative subpoena because of an alleged jurisdictional defect, especially prior to an enforcement action. . . . absent . . . any substantial threat of irreparable harm . . . Objections to the scope of the subpoena can be raised during the enforcement action and challenges to jurisdiction if . . . suit is instigated . . . .").

(2d Cir. 2020), the Second Circuit rejected the argument that Section 7 of the FAA imposes Rule 45's obligations on district courts in proceedings to enforce arbitration summonses:

> [T]he respondents cite no authority – and we are aware of none – that interprets this text to impose <u>Rule 45</u>'s obligations on district courts in proceedings to enforce arbitration summonses under section 7 of the FAA. And the text does not support that interpretation. It indicates that summonses are to be enforced in the same manner that a subpoena is to be enforced – i.e., by compulsion or contempt. Rule 45 does not cover these processes. Instead, it covers subpoenas generally – what they contain, how they are served, where they can require a person to go, and how a person must respond, among other things.
>
> * * *
>
> It is the forum that "issues" a subpoena, and the one that decides objections to it and any evidence obtained pursuant to it. *See generally* Fed. R. Civ. P. 45. The same structure applies in arbitration. The panel is responsible for issuing summonses, hearing evidence, and ruling on objections.

958 F.3d at 138-39 (emphasis in original; footnotes and citations omitted). The Court is therefore "not obliged to consider objections based on Rule 45." *Id.* at 139. Moreover, Gallagher's objections to the Summons, including its burden and timing objections, are properly addressed in the first instance to the Arbitrator. *Id.* at 138 n.8 (citing *Odfjell ASA v. Celanese AG*, 348 F. Supp. 2d 283, 287 (S.D.N.Y. 2004)).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Gallagher's Emergency Motion for Temporary and Preliminary Injunctive Relief.

/s/ *Dena Economou*
Dena Economou
Gerald E. Ziebell
Thomas D. Ferguson
KARBAL, COHEN, ECONOMOU, SILK
& DUNNE, LLC
200 S. Wacker Drive, Suite 2550
Chicago, IL 60606
Tel:    (312) 431-3700

14

Fax:    (312) 431-3670
Email: deconomou@karballaw.com
        gziebell@karballaw.com
        tferguson@karballaw.com

and

James P. Ruggeri (*pro hac vice forthcoming*)
Edward B. Parks, II (*pro hac vice forthcoming*)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, D.C. 20006
Tel:    (202) 984-1400
Fax:    (202) 984-1401
Email: jruggeri@ruggerilaw.com
        eparks@ruggerilaw.com

*Attorneys for Defendant Great American E&S Insurance Company*