# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO.; ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, LLC; and GALLAGHER IP SOLUTIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GREAT AMERICAN E&S INSURANCE COMPANY, <br><br> Defendant. | Case No. 1:25-cv-04474 <br><br> Hon. Matthew F. Kennelly |

## GREAT AMERICAN E&S INSURANCE COMPANY'S
## MOTION TO DISMISS OR TRANSFER

Great American E&S Insurance Company ("Great American") brings this motion to dismiss the Complaint of Arthur J. Gallagher & Co. ("AJG"), Arthur J. Gallagher Risk Management Services, LLC ("Gallagher Risk"), and Gallagher IP Solutions LLC ("GIPS") (collectively "Gallagher"), or in the alternative to transfer the case to the Southern District of New York. Great American moves under Federal Rules of Civil Procedure 12(b)(3) and (6) and 28 U.S.C. § 1406.

## INTRODUCTION

The arbitration to which Gallagher objects is pending in the Southern District of New York. When Great American sought to obtain discovery from Gallagher in the arbitration (before Gallagher was joined to the arbitration), it served a subpoena on Gallagher at its principal place of business in Illinois. Gallagher, which resists both participating in the arbitration and complying with the subpoena, saw an opportunity to register both of its objections in a single

proceeding close to home.  It filed this action seeking to enjoin the arbitration with respect to Gallagher and to quash the subpoena.  However, venue here is improper for both of its claims.  Gallagher's claim for an injunction rests on section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and its claim for quashing rests on section 7, 9 U.S.C. § 7.  Both section 4 and section 7 are clear that a party seeking relief must proceed in the federal district where the arbitration is pending – in this case, the Southern District of New York.

The lack of proper venue requires that the case be dismissed without prejudice or transferred to the Southern District of New York.  But, if the Court reaches the merits, it should dismiss Gallagher's claim for an injunction with prejudice because it has failed to adequately allege irreparable harm or the absence of an adequate remedy at law.  Numerous cases from the Seventh Circuit and district courts within the Circuit have held that a party cannot obtain an injunction against an arbitration without making a showing of irreparable harm, and expense and delay – which is the only harm Gallagher can allege here – are not irreparable harm.[1]

## ARGUMENT

**I.     VENUE DOES NOT LIE IN THIS COURT WITH RESPECT TO EITHER OF GALLAGHER'S CLAIMS.**

When faced with a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3), the plaintiff bears the burden of proving venue is proper.  *Dutch Valley Growers, Inc. v. Rietveld*, 314 F.R.D. 293, 295 (N.D. Ill. 2016).  "[V]enue must be proper as to each cause of action." *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 681 F. Supp. 1297, 1301 (N.D. Ill. 1988).  For both of Gallagher's claims, venue is improper in this district.

---

[1]     The Court could also dismiss on alternative merits-based grounds:  that Gallagher has not shown that the Arbitrator exceeded his authority in deciding the arbitrability issue or that he decided that issue incorrectly.  Great American addressed both of those issues in its opposition to Gallagher's motion for a preliminary injunction (ECF No. 23 at 7-10); Great American is not waiving those arguments and incorporates by reference those arguments here.

A. **Venue Does Not Lie for Gallagher's Claim for an Injunction.**

In its Complaint, Gallagher asserts that "[v]enue is proper pursuant to 9 U.S.C. § 4, which provides that this Petition may be filed in any United States District Court." ECF No. 1 ¶ 8. This is wrong. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995), the Seventh Circuit held that, although it initially appears that section 4 grants "broad authority" to any court that would otherwise have jurisdiction, "[t]his authority . . . quickly narrows":

> The statute subsequently mandates that "the hearing and proceedings ... shall be within the district in which the petition for an order directing such arbitration is filed" . . . **[T]he directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control.** . . . [T]he inescapable logical import in the present situation, in which the location of arbitration is preordained, is that the statute limits the fora in which § 4 motions can be brought.

*Id.* at 327 (emphasis supplied). *See also Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Under the statute, a district court has no power to order arbitration to take place outside of its own district."). In short, the Seventh Circuit has plainly stated that a cause of action under section 4 *must* be brought in the district where the arbitration is proceeding. That is in accord with the majority rule. *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) (agreeing with the "majority view" that only a district court in the forum where arbitration is to occur has authority to compel arbitration); *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974) ("in Section 4 . . . the requirement that arbitration take place in the district court where the petition is filed is clear and unequivocal"); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) ("the Federal Arbitration Act prevents federal courts from compelling arbitration outside of their own district").

3

*Merrill Lynch* and *Synder* concerned motions to compel arbitration, but a court in this district has subsequently applied their reasoning to a motion to enjoin arbitration. In *UAL Corp. v. Mesa Airlines, Inc.*, 88 F. Supp. 2d 910 (N.D. Ill. 2000), the Court pointed out that if a party may seek an injunction in a district other than the one where the arbitration is being held or to be held, that party essentially has two bites at the injunctive apple:

> Under plaintiffs' theory, if this court ruled in their favor, holding that the dispute is not arbitrable, the court could enjoin the arbitration, or at least enjoin defendant from pursuing it. If, on the other hand, the court held against plaintiffs and did not enjoin the arbitration, plaintiffs could ignore this court's order and force defendant to sue plaintiffs in Colorado to compel their compliance with the demand for arbitration. This is [] unacceptable. Under § 4, plaintiffs' suit to enjoin the arbitration must be heard in the District Court of Colorado, which alone has the authority to compel plaintiffs to arbitrate if appropriate, and to exercise preliminary control over the arbitration.

*Id.* at 913-14.

Gallagher cites two out-of-circuit cases to support its argument to the contrary, which fails for two reasons. First, whatever the law may be elsewhere, the Seventh Circuit "requires a geographic link between the site of the arbitration and the district which, by compelling arbitration ***or directing its scope***, exercises preliminary control." *Merrill Lynch*, 49 F.3d at 327 (emphasis supplied). The emphasized phrase shows that the holding of *Merrill Lynch* applies as much to motions to enjoin arbitration as motions to compel it. Indeed, as the *UAL* court explained, if section 4 requires a motion to compel to be brought in the district where the arbitration is proceeding, and it does, then a motion to enjoin must also be brought in that district; otherwise, the party opposing arbitration can make the party seeking it litigate the same issue twice. 88 F. Supp. 2d at 913-14. More generally, in view of the FAA's "policy of rapid and unobstructed enforcement of arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 3 (1983), it is hard to see how section 4 of the FAA could be intended to make it easier to enjoin arbitrations than to compel them.

Second, Gallagher's two cases are misanalysed. One of them, *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 784 (9th Cir. 2001), declares that "the FAA's venue provisions are discretionary, not mandatory." But the FAA has a variety of venue provisions, and they are not all the same. *Textile Unlimited* relies on *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000), but that case addresses the venue provisions of sections 10 and 11 of the FAA, which do not contain the restrictive language of section 4. Moreover, the Supreme Court concluded that sections 10 and 11 were permissive rather than mandatory on the basis of policy considerations not relevant to section 4. *Id.* at 200.

In *Merrill Lynch*, unlike *Textile Unlimited*, the court took these differences into account, observing out that "§§ 9 and 10 are couched in permissive language," but "[i]n contrast, § 4 is mandatory in its terms." 49 F.3d at 329. *Ansari* makes the same point:

> [*Textile Unlimited's*] approach . . . fails to recognize that there is a difference between § 4 and §§ 9–11. And *Cortez Byrd Chips* specifically addresses §§ 9–11, not § 4. Although § 4 initially states a party "may petition any United States district court which, save for such agreement" has jurisdiction, it later, more narrowly, states "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." Unlike §§ 9–11, which use the permissive language "may," § 4 uses the mandatory language "shall." Thus, the different sections have different venue provisions.

414 F.3d at 1219. Gallagher's other case, *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*, 764 F.3d 210, 214 (2d Cir. 2014), relies on *Textile Unlimited* and fails to cite *Merrill Lynch* or *Ansari*.

B. **Venue Does Not Lie for Gallagher's Claim for Quashing.**

For its second cause of action, quashing the subpoena, Gallagher's Complaint asserts the same basis for venue as for its first, section 4 of the FAA; in addition, it cites Fed.R.Civ.P. 45. ECF No. 1 ¶ 8. To the extent Gallagher intends to rely on section 4, venue is proper only in the

5

Southern District of New York for the reasons described above. But Gallagher's claim for quashing rests not on section 4 but rather on section 7, and the venue provision of section 7 provides that application thereunder shall be made to "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7. The case law confirms that relief must be sought in the district where the arbitrators are sitting – here, the Southern District of New York. *See Alliance Healthcare Servs., Inc. v. Argonaut Priv. Equity, LLC*, 804 F. Supp. 2d 808, 813 (N.D. Ill. 2011) ("FAA section 7 permits only a court in the district where the arbitration is being conducted to enforce an arbitration subpoena"); *Am. Income Life Ins. Co. v. FFL Onyx, L.L.C.*, 720 F. Supp. 3d 518, 521 (E.D. Mich. 2024) ("[T]he venue provision in FAA § 7 is telling: The District Court to be petitioned is based on where 'such arbitrators, or a majority of them, are sitting ....' 9 U.S.C. § 7."). In short, both section 4 and section 7 establish the Southern District of New York as the proper venue.

Finally, Gallagher's reliance on Rule 45 is also misplaced. Section 7 "permits *only* a court in the district where the arbitration is being conducted" to grant relief. *Alliance Healthcare,* 804 F. Supp. 2d at 813 (emphasis supplied). This means that a party may not circumvent the limitations of section 7 by relying on other general venue provisions. *See Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 790 (E.D. Wis. 2003) (if a special venue statute limits the venue of one of the claims that make up the plaintiff's cause of action, then the venue of that cause of action has been "otherwise provided by law," and the general venue provision no longer governs).[2]

---

[2] In any event, a violation of Rule 45 does not give rise to an independent cause of action. *See* 28 U.S.C. § 2072(b) (federal rules "shall not abridge, enlarge or modify any substantive right"); *Taylor v. City of Chicago*, No. 05 C 1476, 2005 WL 1692635, at *2 (N.D. Ill. July 6, 2005) ("Plaintiffs seek monetary damages and an injunction enjoining the city from violating Rule 45 . . . A violation of the Federal Rules of Civil Procedure does not give rise to an independent cause of action").

## II. GALLAGHER HAS FAILED TO MAKE AN ADEQUATE ALLEGATION OF IRREPARABLE HARM.

A plaintiff is entitled to a permanent injunction upon a showing of "(1) success, as opposed to a likelihood of success, on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and (4) that the public interest will not be harmed by the relief requested." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012) (quoting *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003)).[3] To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege more than conclusory allegations of irreparable harm; it must allege facts that, if substantiated, amount to irreparable harm as matter of law. *See Loc. Union 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 191 F. Supp. 2d 987, 991–92 (N.D. Ill. 2001) ("[T]he court cannot accept the Union's mere conclusory statement that it will suffer irreparable harm. Rather, the court must decide whether the Union has alleged enough facts that would establish irreparable harm."); *Delgado v. Vill. of Burnham*, No. 10 C 3012, 2011 WL 1807430, at *3–4 (N.D. Ill. May 6, 2011) (granting motion to dismiss because plaintiff "has not pled facts sufficient to lead the Court to conclude that a real and immediate potential for injury is present if injunctive relief is not granted"). Here, in its first cause of action, Gallagher has failed to plead facts that amount to irreparable harm, and therefore it has failed to state a claim for which relief can be granted.

In its opposition to Gallagher's motion for a preliminary injunction, Great American pointed out that the Seventh Circuit has rejected the argument that the denial of an injunction

---

[3] "The standard for a permanent injunction is similar to that for a preliminary injunction [but f]or a permanent injunction, the plaintiff must prove actual success on the merits rather than the likelihood of success on the merits." *Hock v. Sec'y of Wisconsin Dep't of Health & Hum. Servs.*, No. 22-CV-668-JPS, 2022 WL 16924300, at *1 (E.D. Wis. Nov. 14, 2022). Instead of "irreparable harm," some cases cite the closely related factor of the absence of an adequate remedy at law. *See, e.g., Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006). As discussed below, neither factor is present here.

7

against an arbitration amounts to the absence of an adequate remedy at law or to irreparable harm:

> [T]he proposition that going forward with an arbitration "unalterably deprives the party of its right to select the forum"—a proposition for which the court did not cite any statute or appellate decision—is false. **Once the arbitration ends, a party that believes the proceeding flawed because the arbitrators exceeded their remit has a simple remedy: a proceeding under the Federal Arbitration Act to deny enforcement to the award.** See 9 U.S.C. § 10(a)(4) (award may be set aside "where the arbitrators exceeded their powers"). If the award should be set aside, litigation in the proper forum would ensue.

*Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.),* 631 F.3d 869, 872 (7th Cir. 2011) (emphasis supplied; citations omitted). The law is plain: if arbitrators exceed their authority, the party opposing arbitration has an adequate remedy at law – a proceeding under the FAA to deny enforcement – and therefore is not entitled to an injunction.[4]

The Seventh Circuit went on to reject the argument that the delay and litigation expenses arising from the denial of an injunction amounted to irreparable harm:

> The only potential injury from waiting until the arbitrators have made their award is delay and the out-of-pocket costs of paying the arbitrators and legal counsel. **Long ago the Supreme Court held that the delay and expense of adjudication are not "irreparable injury"**—if they were, every discovery order would cause irreparable injury. We held in *PaineWebber Inc. v. Farnam,* 843 F.2d 1050 (7th Cir. 1988), and *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13 (7th Cir. 1985), that the sort of argument Trustmark advances in its effort to establish "irreparable injury" is frivolous.

*Id.* (emphasis supplied). Accordingly, in arguing that it will merely experience delay and expense if an injunction is denied, Gallagher has not shown irreparable injury.

---

[4] For purposes of this analysis, a statutory remedy is a remedy "at law." *See Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2021) ("Smith cannot resort to a remedy in equity (unjust enrichment) when she has a remedy at law (§ 146.83(3f)(b))."); *Fort Transfer Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 06 C 3529, 2007 WL 707545, at *9 (N.D. Ill. Mar. 2, 2007) ("The court also believes that Fort Transfer has an adequate remedy at law based on the statutory procedures mandated by the MPPAA.").

As the Seventh Circuit explained many years before *Trustmark*:

> The only harm that an order to arbitrate does is to make the party against whom the order is issued litigate a dispute in a forum not of his choosing. That is no different from the harm of being turned down on a motion to dismiss or for summary judgment, thereby being forced to try a case that one does not believe should be tried, or from the harm of being transferred to another district court or remanded to a state court . . . .

*Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Loc. No. 2 v. Chicago Trib. Co.*, 779 F.2d 13, 15 (7th Cir. 1985) ("*Chicago Tribune*"). And it is not irreparable harm that the case may prove not arbitrable after all:

> [W]e decline to say that a party ordered to arbitrate can never show irreparable harm such as might support a request that the order be stayed pending appeal. But we are confident that such cases will be extraordinarily rare, that this case is not one, that employers who seek stays merely on the ground that the arbitration may turn out to be a wasted expense of time and money are whistling in the dark, and that we will not hesitate to mete out sanctions in future cases to persons who make applications for stays of arbitration in circumstances such as disclosed by the record of this case.

*Id.* at 16; s*ee also Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, No. 04 C 5852, 2006 WL 3486882, at *3 (N.D. Ill. Nov. 29, 2006) ("The Seventh Circuit has specifically held, in the context of a request for a stay pending appeal, that the fact that an order to arbitrate imposes a cost . . . does not show irreparable harm" (citing *Chicago Tribune*)); *Molton, Allen & Williams LLC v. Continental Cas. Ins Co.*, No. 09 C 6924, 2010 WL 11888843, at *2 (N.D. Ill. Apr. 6, 2010) ("the Seventh Circuit has held that it is extremely difficult for a party to demonstrate irreparable harm in this context [i.e., enjoining arbitration]" (citing *Chicago Tribune*)).

In between *Chicago Tribune* and *Trustmark*, the Seventh Circuit made essentially the same points on at least two other occasions. *See PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1051 (7th Cir. 1988) ("the ordinary incidents of litigating (or arbitrating) a case are not

9

'irreparable injury'" (quoting *Chicago Tribune*)); *AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 762 (7th Cir. 2003) ("All AT&T could lose from the delay is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury.").

Courts in this district have had no difficulty applying *Trustmark* in accordance with its plain meaning:

> Signal's only argument for irreparable harm and lack of a legal remedy is that the arbitration is duplicative of this litigation. But that is insufficient to establish irreparable harm. *Trustmark Ins. Co.* v. *John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011).
>
> Moreover, Signal has adequate legal remedies. . . . If Signal defeats the claims, it will have suffered no harm by arbitrating instead of litigating them. If Olsen succeeds, Signal has yet another potential legal remedy—a motion to vacate the arbitral award under 9 U.S.C. § 10.

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2020 WL 1848222, at *2-3 (N.D. Ill. Apr. 13, 2020). Other cases in this Circuit have similarly followed *Trustmark* in finding neither absence of legal remedy nor irreparable harm in denying an injunction against an arbitration. *See Freund v. UBS Fin. Servs., Inc.*, 141 F. Supp. 3d 797, 812–13 (N.D. Ill. 2015) ("Based on this precedent [*i.e.*, *Trustmark*], the Court concludes that . . . Plaintiff would not be irreparably harmed nor would he lack an adequate remedy at law if he were required to participate in the FINRA arbitration."); *Legaspy v. Fin. Indus. Regul. Auth., Inc.*, No. 20 C 4700, 2020 WL 4696818, at *3–4 (N.D. Ill. Aug. 13, 2020) ("A party dissatisfied with an arbitral award may petition to vacate it in federal court, thus ordinarily providing a legal remedy for harms caused in arbitration. 9 U.S.C. § 10(a)," and "delay and expense of adjudication are not 'irreparable injury'" (citing *Trustmark*)); *In re Charmoli*, 651 B.R. 529, 537 (Bankr. E.D. Wis.

10

2023) ("Controlling precedent makes clear, however, that 'delay and expense of adjudication are not irreparable injury'" (citing *Trustmark*)).

Gallagher's claim of irreparable harm is also undermined by one of its own contentions. According to Gallagher, the Arbitrator's decision to resolve the arbitrability issue himself was "blatantly improper." ECF No. 10 at 9. If that is so, then Gallagher has nothing to fear: it can simply ignore the arbitration and then later move to set aside the award as beyond the arbitrator's authority under section 10 of the FAA. Alternatively, it could engage in the arbitration – which would entail costs but not irreparable harm – to obtain what amounts to a free second bite at the apple. If Gallagher can persuade the Arbitrator that it should win on the merits, it is home free; if it cannot, it can always resort to section 10. Gallagher suffers irreparable harm only if it ultimately is proven wrong about the propriety of the Arbitrator's decision to decide the arbitrability issue – and if it is wrong about that issue, then plainly it is not entitled to an injunction. In other words, the only outcome that would cause irreparable harm (Gallagher losing its section 10 argument after deciding to abstain from the arbitration) would also show that Gallagher is *not* entitled to an injunction because it cannot meet another requirement for an injunction, success on the merits.

Gallagher has tried to distinguish *Trustmark* on the ground that "the Seventh Circuit found that the reasoning Gallagher relies on here did not apply in *Trustmark* because, unlike here, '*Trustmark did* agree to arbitrate.'" ECF No. 26 at 4 (quoting *Trustmark*, 631 F.3d at 872) (emphasis in original). This argument fails in at least two ways. First, although Gallagher's citation to the Seventh Circuit's *Trustmark* opinion is accurate, the district court had found that, while the parties had agreed to arbitrate under an underwriting agreement, they had *not* agreed to arbitrate under a separate confidentiality agreement. *Trustmark Ins. Co. v. John Hancock Life*

11

*Ins. Co.*, 680 F. Supp. 2d 944, 949 (N.D. Ill. 2010), *rev'd*, 631 F.3d 869 (7th Cir. 2011). The Seventh Circuit did not disagree, but it determined that the two agreements were sufficiently related to make arbitration appropriate. In short, there was a legitimate issue as to arbitrability.

Second, the Court, in finding that there was an agreement to arbitrate, was addressing the first of "two principal problems" with the district court's analysis. *Trustmark*, 631 F.3d at 872. The first problem – that there was an agreement to arbitrate – occupied two short sentences of the Court's opinion. The second problem – that there was no showing of irreparable harm – was completely independent of the first and was the Court's chief focus, taking up two substantial paragraphs. That second, independent holding is why *Trustmark* is controlling here, and Gallagher has no real response.

In any event, Gallagher's attempted distinction of *Trustmark* on the facts does not apply to the cases that *Trustmark* followed – *Chicago Tribune*, *PaineWebber*, and *AT&T Broadband* – nor to the cases that follow it, such as *Signal*, *Freund*, and *Legaspy*. The lesson of these cases is clear: delay and expense do not justify enjoining an arbitration.

Shifting gears, Gallagher argues that, in *Trustmark*, "[t]he Seventh Circuit did not suggest that a party in Gallagher's position is unable to enjoin an arbitration, and to the contrary, has continued to make clear that injunctions enjoining arbitrations are permissible even after *Trustmark*." ECF No. 26 at 4. But Great American has not argued that an injunction against an arbitration is *impossible* to obtain. It argues, with the support of the case law, that obtaining an injunction requires a more substantial showing of irreparable harm than Gallagher can make.

Nothing that Gallagher cites supports its argument for irreparable harm. It relies on *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 654 (7th Cir. 2014) for the innocuous proposition that, after reversal and remand, "reinstatement of injunctive relief against the

arbitration" might be "possible." So it might, if the district court first grappled with the issue of irreparable harm as discussed in *Chicago Tribune* and *Trustmark*, which *J.P. Morgan Chase* did not do. *J.P. Morgan Chase* cited neither case, nor did it use the phrase "irreparable harm."

Gallagher's only other cases on irreparable harm or adequate remedy at law are both unreported district court decisions, *Hospira, Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *15 (N.D. Ill. July 19, 2013) and *Virchow Krause Capital, LLC v. North*, No. 11 C 8169, 2012 WL 123673 at *1 (N.D. Ill. Jan. 17, 2012). These cases contain only cursory discussions of the issue, and neither of them so much as mentions *Trustmark* or *Chicago Tribune*.

## **CONCLUSION**

The Court should dismiss without prejudice Gallagher's Complaint because of improper venue. Alternatively, the Court may transfer this action to the Southern District of New York under 28 U.S.C. § 1406. If the Court reaches the merits, it should dismiss with prejudice Gallagher's first cause of action for failure to state a claim because it fails to allege irreparable harm sufficiently.

Respectfully submitted,

Dated: May 15, 2025　　　　　　　　　　/s/　　Gerald E. Ziebell
　　　　　　　　　　　　　　　　　　　　Dena Economou
　　　　　　　　　　　　　　　　　　　　Gerald E. Ziebell
　　　　　　　　　　　　　　　　　　　　KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
　　　　　　　　　　　　　　　　　　　　200 S. Wacker Drive, Suite 2550
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　Tel: (312) 431-3700
　　　　　　　　　　　　　　　　　　　　Fax: (312) 431-3670
　　　　　　　　　　　　　　　　　　　　Email: deconomou@karballaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　gziebell@karballaw.com

13

and

James P. Ruggeri (*pro hac vice*)
Edward B. Parks, II (*pro hac vice*)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, D.C. 20006
Tel: (202) 984-1400
Fax: (202) 984-1401
Email: jruggeri@ruggerilaw.com
eparks@ruggerilaw.com

*Attorneys for Defendant Great American E&S Insurance Company*