IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., et al., ) ) ) Plaintiffs, ) ) vs. ) ) GREAT AMERICAN E&S ) INSURANCE CO., ) ) Defendant. ) | Case No. 25 C 4474 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Arthur J. Gallagher & Co. and several related entities (collectively Gallagher) have filed suit against Great American Insurance Company. The suit concerns an arbitration proceeding before the American Arbitration Association between Great American and UMB Bank, N.A. At Great American's request, the arbitrator ordered Gallagher to participate in the arbitration. The arbitrator also authorized service upon Gallagher of a "summons" to produce documents and testimony. Gallagher asks the Court to enjoin the compelled participation in the arbitration and to quash the summons. It has moved for a temporary restraining order and a preliminary injunction. The requirements for both types of relief are effectively the same; the parties have briefed them matter; and neither side has asked to introduce testimony or other additional evidence. So the Court will bypass the request for a TRO and proceed directly to the request for a preliminary injunction.

To obtain a preliminary injunction, a plaintiff must show that it has some likelihood of success on the merits of its claim; "traditional legal remedies are inadequate"; and it would suffer irreparable harm without a preliminary injunction. *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2024). If the plaintiff establishes these requirements, then the court "balance[s] the equities," weighing the harm to the movant if the injunction is denied against the harm to the nonmovant and others if the injunction is granted. *Id.*

1. *Subject matter jurisdiction.* The first question is subject matter jurisdiction. Though initially unclear, this has now been cleared up. Gallagher has established complete diversity of citizenship, and the amount-in-controversy requirement is unquestionably met.

2. *Venue.* The second question is venue. Great American contends that, under 9 U.S.C. § 4, venue is improper because the arbitration is proceeding in New York, so only a federal judge in New York can enjoin it. But that is not what section 4 says. The relevant part of section 4 reads as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed*. . . .

9 U.S.C. § 4 (emphasis added).

The italicized sentence has been read to mean that only a court sitting in the

2

geographic venue where the arbitration is to take place may compel the parties to proceed to arbitration there. *See, e.g., Faulkenburg v. CB Trax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[A] district court cannot compel arbitration outside the confines of its district"). But that is not the situation here; no one has asked this Court to compel arbitration. Rather, Gallagher, which is located in this district and is being forced into the arbitration against its will, has asked the Court to enjoin its compelled participation. Nothing in the language of section 4 limits the venue of actions to enjoin an arbitration. *See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 213-14 (2d Cir. 2014) ("[T]he FAA does not restrict the venue for an action to enjoin arbitration . . . ."); *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, , 783 784 (9th Cir. 2001) ("[W]e conclude that the Federal Arbitration Act does not require venue in the contractually-designated arbitration locale."). Great American did not otherwise challenge venue in its response to the motion for preliminary injunction, so the Court moves on to the next issue.

   3. *Likelihood of success on the merits – the arbitration.* Gallagher has shown, at the very least, a reasonable likelihood of success on its contention that the arbitrator lacked authority to compel Gallagher, a non-party to the arbitration contract, to participate in the arbitration. Great American, when challenged at oral argument, could cite no case in which a court has held that *an arbitrator* may compel a non-party to an arbitration agreement to participate in the arbitration.

   Federal judges derive their authority from the Constitution and statutes enacted by Congress that apply to everyone and confer the authority to adjudicate certain types of disputes. By contrast, an arbitrator's authority comes from, and only from, a contract.

3

Gallagher was not a party to the contract that established the arbitrator's authority. It is no answer to this to say, as Great American does, that Gallagher wrote the contract. A person does not become a party to a contract by drafting it; otherwise the lawyers who draft a settlement agreement in a lawsuit would be parties against whom the agreement could be enforced, or the general counsel of an insurance company like Great American could be made a party to a lawsuit enforcing, say, a contract for services with the insurance company. That is not the law.

There are, to be sure, situations in which a non-party to an arbitration agreement may be required to arbitrate—such as by way of estoppel, agency, veil-piercing, incorporation by reference, or assumption. *See, e.g., Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) (citing *Am. Bureau of Shipping v. Tenara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999)); *see also Zurich Am. Incs. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). But the question here is *who gets to decide that issue*. And the law is clear that "whether the parties have agreed to arbitrate is presumptively a question for judicial determination." *United Nat. Foods, Inc. v. Teamsters Local 414*, 58 F.4th 927, 934 (7th Cir. 2023) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548 (1964)). The presumption has not been rebutted here.

Even the cases that say that the authority to determine whether a person may be compelled to arbitrate may be conferred by contract upon the arbitrator limit this to a situation where *the parties* have so agreed, which necessarily means the persons being compelled to arbitrate: "Unless *the parties* clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not

the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis added). *See also, e.g., United Nat. Foods*, 58 F.4th at 933-34; *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001).

The bottom line is this: A and B, on their own, cannot appropriately bind C, a non-party to their contract, to litigate claims before an arbitrator.

When a court determines that a party has not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceeding. *See In re Am. Ex. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140-41 (2d Cir. 2011); *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981). That is the situation here.

For these reasons, Gallagher has shown a very strong likelihood of success on its contention that the arbitrator acted outside his authority in adding Gallagher, without its consent, as a party to the Great American vs. UMB arbitration. The Court notes that ff Great American were so sure of its contention that Gallagher can be forced into the arbitration, it could have headed off this lawsuit rather easily, by filing a petition in court (presumably, in the appropriate federal district in New York) to compel Gallagher's participation.

4. *Likelihood of success on the merits – the summons.* This leaves the summons served upon Gallagher directing it to produce a witness for a pre-arbitration-hearing deposition as well as documents. If one views Gallagher as, effectively, a non-party to the arbitration, the arbitrator's authority to compel it to appear and produce records is limited to the authority conferred by 9 U.S.C. § 7. That provision states, in relevant part, that

> [t]he arbitrator[ ] may summon in writing any person to attend before them . . . as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. . . . Said summons shall issue in the name of the arbitrator . . . and shall be served in the same manner as subpoenas to appear and testify before the court. if any person . . . so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrator[ ] . . . [is] sitting may compel the attendance of such person . . . before said arbitrator, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7. At least two circuits have read this provision to limit an arbitrator's authority to summoning persons to the arbitration and requiring them to produce documents *for an arbitration hearing*. *See, e.g., Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 217-18 (2d Cir. 2008); *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d Cir. 2004). This Court agrees with these decisions; that is how section 7 reads. Here, however, the summons is not for appearance at a hearing, as it sets a date in June 2025, and the arbitration hearing is not scheduled until 2026. Rather, it's for the equivalent of a deposition, perhaps a Rule 30(b)(6) deposition, in a civil case. Thus if directed to a non-party, the summons exceeds the arbitrator's legitimate authority.

In a motion filed a couple weeks after the preliminary injunction hearing, Great American contends that venue is lacking for this claim by Gallagher as well. It relies on 9 U.S.C. § 7, quoted above. But as with section 4, Great American's argument disregards the plain language of section 7. The statute says that attendance pursuant to an arbitration summons may be *compelled* by the district court for the district where the arbitration hearing is to take place. Here, however, the Court is not dealing with a request to compel appearance under a summons. Section 7 says nothing about what is

6

at issue here, which is a request to *quash* such a summons.

The Court also notes on this point that section 7 says that summonses must be served as subpoenas for witnesses are served. In a civil case, that is effectively a cross-reference to Federal Rule of Civil Procedure 45. That rule confers authority to quash a subpoena upon "the court for the district where compliance is required," Fed. R. Civ. P. 45(d)(3)(A), which in this case is the Northern District of Illinois. *See* Pl.'s Mem., Ex. 8 (arbitration summons, requiring compliance in Chicago).

In short, Gallagher has established a likelihood of success on its contention that the arbitration summons exceeded the arbitrator's authority.

4. *Inadequacy of legal remedies; irreparable harm.* The next questions are whether "traditional legal remedies are inadequate" and whether Gallagher would suffer irreparable harm without a preliminary injunction. *See Finch*, 82 F.4th at 578. These are interrelated questions, so the Court addresses them together.

One would think that the literal meaning of "irreparable harm" covers an expenditure of a good deal of money for legal fees that cannot be recovered from anyone else after the fact. That's harm (paying money), it's irreparable (the payor can't get it back), and there's no remedy at law for it (ditto). But the law, at least in this Circuit, is to the contrary in the arbitration context. In *Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.)*, 631 F.3d 869 (7th Cir. 2011), the Seventh Circuit rather resoundingly rejected exactly this argument for irreparable harm, going so far as to characterize it as "frivolous." *Id.* at 872. In doing so, the court relied on three Supreme Court decisions. Specifically, the Seventh Circuit cited *Petroleum Exploration, Inc. v. Public Service Commission of Kentucky*, 304 U.S. 209, 223 (1938), in which the

7

Court stated that "[w]hen the only ground for interfering with the state procedure is the cost of preparing for a hearing, there is no occasion for equitable intervention," and *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980), in which the Court quoted *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974), for the proposition that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."

It's a fair retort to say that there's way more to it than "mere" expense or "only" the cost of litigating. Among other things, a party forced to participate in what amounts to a dry run at litigation has to divert the attention of its employees who testify in or supervise the litigation, and it ends up disclosing its litigation strategy before a decisionmaker who lacks authority. But the Seventh Circuit has taken care of that, too, saying that "the ordinary incidents of litigating (or arbitrating) a case are not 'irreparable injury.'" *PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1051 (7th Cir. 1988) (cited in *Trustmark Ins. Co.*, 631 F.3d at 972). Gallagher cites a handful of district court cases that go the other way, but those cases don't acknowledge *Trustmark*, and the only later Seventh Circuit case Gallagher cites simply alludes to the possibility of enjoining an arbitration without developing the point. *See J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 654 (7th Cir. 2014).

Gallagher points out that the Seventh Circuit cases in the arbitration context establishing this principle involved parties that *had agreed to arbitrate* and were disputing only the scope or timing of the arbitration. That's true. But this seems to the Court to be a distinction without a difference, particularly given the vehemence with which the Seventh Circuit has reemphasized the "this isn't irreparable harm"

8

proposition.

All of this seems to the undersigned judge to be just plain wrong. As Gallagher argues, if the no-irreparable-harm proposition is accepted, it allows parties to end-run the rule that judges decide whether a party has agreed to arbitrate and instead get an arbitrator to impose his authority on others who have not agreed to a private decision maker. It's not hard to come up with hypothetical situations in which this would lead to pernicious results and, effectively, undermine the authority and legitimacy of the judicial system established by our Constitution and by Congress. What about, for example, a party who (unlike Gallagher) can't afford to fight off a case twice? Under *Trustmark*, that party is stuck litigating its defenses in an arbitration to which it never agreed, in a forum that by definition offers more limited procedural protections than a court, and it may never get an actual shot at a judicial tribunal. But under *Trustmark* and *PaineWebber*, that's just tough luck—the possibility of running out of resources would seem to be just one of the "ordinary incidents of litigating."

In short, the Court is of the view that *Trustmark* (and the other cited case) got it wrong, at least in this context. But just as Gallagher is concerned about litigants end-running courts, this Court cannot appropriately end-run the Seventh Circuit. This is not a situation in which personal liberty or the Constitutional order is at issue; the dispute is about money. The Court concludes that the rule of *Trustmark* applies here; the case is binding on district courts in this Circuit; and as a result Gallagher cannot show irreparable harm, a necessary element to obtain a preliminary injunction against the arbitrator's order adding it to the Great American—UMB arbitration. And because this means, in effect, that Gallagher is a party to the arbitration, any remedy regarding the

arbitrator's issuance of a summons is before the arbitrator, not this Court.

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion for entry of a temporary restraining order or a preliminary injunction [dkt. no. 9]. The case is set for a telephonic status hearing on June 17, 2025 at 8:50 a.m., using call-in number 650-479-3207, access code 2305-915-8729. A joint status report is to be filed on June 10, 2025.

Date: May 20, 2025

_____
MATTHEW F. KENNELLY
United States District Judge